**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YSAURO R. MUNOZ,
          *Plaintiff-Appellant,*

v.

RAYMOND EDWIN MABUS, JR.,*
Secretary, Department of the
Navy,

          *Defendant-Appellee.*

No. 08-16374

D.C. No.
1:06-cv-00649-JMS-
KSC

OPINION

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
October 12, 2010—Honolulu, Hawaii

Filed December 27, 2010

Before: Michael Daly Hawkins, M. Margaret McKeown and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Hawkins

---

*Raymond Edwin Mabus is substituted for his predecessor, Gordon R. England, as Secretary of the Department of the Navy, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

Steven M. Spiegel, Alexandria, Virginia, for the plaintiff-appellant.

Thomas A. Helper, Assistant United States Attorney, Honolulu, Hawaii, for the defendant-appellee.

## OPINION

HAWKINS, Senior Circuit Judge:

Ysauro Munoz appeals an adverse summary judgment ruling on two claims arising from a single dispute over whether a Title VII predetermination settlement agreement required the Navy to provide him a particular type of training. Munoz foremost brings a breach of contract action, over which the

district court lacked subject matter jurisdiction, and we therefore vacate summary judgment on Count 1 and remand with instructions to dismiss. Munoz also alleges that the denial of training was in retaliation for filing his underlying age and race discrimination complaint. We have jurisdiction over this Count and affirm.

## BACKGROUND

### I. Facts

Munoz has been employed for a number of years at the Naval Ship Repair Facility ("Ship Repair") in Yokosuka, Japan. As an Engineering Technician in the Combat Systems Department, Weapons System Division, Munoz provides technical, repair, and modernization services to the Navy's ships and weapons systems. Munoz has worked on a variety of weapons systems over the course of his career, prominently including the MK 13 Guided Missile Launcher system.

In response to the command instructions to reduce its personnel by two, the Combat Systems Department decided in 1997 not to renew Munoz's overseas travel arrangement and to eliminate his position (or "billet") upon his departure. Munoz consequently enrolled in the Priority Placement Program ("PPP") for return to the United States when a job for which he qualified became available. While enrolled in the PPP, Munoz was granted repeated six-month extensions of his tour at Ship Repair, but his lead responsibilities were gradually reassigned to other employees. This prompted Munoz to file a formal Equal Employment Opportunity ("EEO") complaint alleging longstanding discrimination on the basis of age and race, including discriminatory denial of career-enhancing training. Rather than having this claim processed through EEOC's review mechanism, Munoz and the Navy voluntarily entered into a February 28, 2002 settlement agreement to resolve the discrimination charges. Under the terms of the agreement, the Navy was required to "provide training to

enhance Mr. Munoz's career within 12 months from the date of th[e] agreement." In exchange, Munoz agreed to withdraw his discrimination complaint and not pursue further action. The agreement also included an integration clause and provided that any alleged noncompliance be processed in accordance with 29 C.F.R. § 1614.504.

Soon after execution of the agreement, Munoz requested training on a new missile launch system (Vertical Missile Launch System, or "VLS"), which was in the process of replacing the MK 13 Missile. Only certified Systems Maintenance Technicians ("SMTs"), who have completed a specialized three-month course, are permitted to supervise VLS work. Peter Rita, Munoz's supervisor and Combat Systems Director, denied the request for VLS training, explaining that (1) Ship Repair had no vacant VLS positions nor any need for additional VLS technicians; (2) in any event, even if a position were available, Munoz would not qualify until he acquired years of necessary experience in addition to the three-month training; and (3) the requested training was cost prohibitive, amounting to one-third of the annual training budget for the entire department.

Munoz made several additional requests for VLS training, all of which were denied on similar grounds. Meanwhile, however, the Navy sent Munoz to a variety of other training programs, at least two of which Munoz acknowledges were career-enhancing, though he insists that the settlement agreement entitles him specifically to VLS training.[1]

---

[1]Within the twelve-month period provided for in the settlement agreement, Ship Repair sent Munoz to an MK 13 Engineering Working Group conference, as well as training programs on VLS deluge valve overhaul and the MK 44 machine gun. Since then, Munoz has also attended trainings on magazine sprinkler operations and maintenance, and MK 45 five-inch gun systems. The last of these sessions qualified him for his current position as an MK 45 five-inch gun technician at Ship Repair, and he is no longer on the PPP list for reassignment.

## II. Procedural History

Munoz filed a request with the Navy's EEO officer to enforce the settlement agreement, alleging that the denial of VLS training violated its terms. Upon review of Munoz's training records, the agency determined that three of the five classes Munoz had attended since execution of the settlement agreement (rigging gear inspection, MK 44 machine gun training, and the MK 13 Engineering Working Group conference) were "directly related to [his] duties as an Engineering Technician, GS-12" and therefore satisfied the Navy's obligations to provide "career-enhancing" training. Munoz timely appealed this decision to the EEOC Office of Federal Operations.

While his first complaint remained pending, Munoz filed a formal complaint, this time alleging retaliatory breach as well as seeking enforcement of the settlement agreement. The Navy EEO officer issued a report finding no breach. After an EEOC Administrative Law Judge ("ALJ") dismissed Munoz's hearing request for lack of jurisdiction because the Office of Federal Operations was already processing an identical claim, the Navy issued a final decision finding that Ship Repair had not discriminated against Munoz on the basis of race or age nor retaliated against him for his prior EEO activity in denying his requests for VLS training. Munoz appealed to the EEOC, which consolidated the two appeals and issued a decision finding that the settlement agreement did not specify any particular training sessions and that no breach had occurred, thereby disposing of Munoz's retaliation claim as well without separately addressing it. *Munoz v. England*, 2005 WL 1714421, at *2-3 (E.E.O.C. July 12, 2005).

Dissatisfied with the EEOC decision, Munoz filed a complaint in district court alleging: (1) breach of the settlement agreement; and (2) violation of Sections 704 and 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), 2000e-16, and of 29 C.F.R. § 1614.101(b). The district court

held a hearing on the parties' cross-motions for summary judgment, at which the court also raised *sua sponte* whether it had subject matter jurisdiction over the breach of contract claim. Concluding that Title VII conferred jurisdiction, the district court granted Defendant's Motion for Summary Judgment on both counts.

## STANDARD OF REVIEW

We review *de novo* a district court's subject matter jurisdiction, interpretation of statutes, and grant of summary judgment. *See Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010); *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is clearly entitled to judgment as a matter of law. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010).

## DISCUSSION

### I.   Count 1: Breach of Predetermination Settlement Agreement

Although not raised by the parties, we have an independent obligation to address subject matter jurisdiction before turning to the merits of the case. *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1021 (9th Cir. 2007). Whether Munoz's claim to enforce a predetermination settlement agreement[2] is one over which the district court had jurisdiction because the claim was "brought under" Title VII remains an open question in this

---

[2]The contract at issue is known as a "predetermination settlement agreement," i.e., an agreement negotiated and entered into prior to formal investigation, determination of reasonable cause, and conciliation attempt by the EEOC. *See* 29 C.F.R. §§ 1601.20(a), 1614.603; *cf.* 42 U.S.C. § 2000e-5(b) (describing the process for arriving at post-determination voluntary settlement, known as "conciliation agreements").

court.³ *See* 42 U.S.C. § 2000e-5(f)(3). We now join our sister circuits in holding that Congress' waiver of sovereign immunity under Title VII does not extend to suits to enforce settlement agreements entered into without genuine investigation, reasonable cause determination, and conciliation efforts by the EEOC. *See Lindstrom v. United States*, 510 F.3d 1191, 1195 (10th Cir. 2007); *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007); *cf. Hansson v. Norton*, 411 F.3d 231, 234-35 (D.C. Cir. 2005) (holding that a claim for attorney's fees was a contractual claim, not one brought under Title VII). The district court therefore lacked subject matter jurisdiction over Count 1, the breach of settlement agreement claim.

### A.  Text of the Regulation

**[1]** The Navy cannot be sued absent an express Congressional waiver of sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). Such waiver "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Furthermore, any legislative

---

³Two of our earlier cases bear on this question but do not directly answer it. In the first, we held that the EEOC could not "leapfrog[ ]" Title VII administrative procedures, which serve as jurisdictional prerequisites, by bringing an action to enforce a predetermination settlement agreement. *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982). That case involved an enforcement action brought by the EEOC against a private employer, whereas the instant case involves an individual complainant's suit against a federal employer, implicating sovereign immunity concerns not present in *Pierce Packing*. In the second, we held the district court lacked jurisdiction to enforce a predetermination settlement agreement where the individual complainant had failed to exhaust administrative remedies under Title VII. *Blank v. Donovan*, 780 F.2d 808, 809-10 (9th Cir. 1986). Because the plaintiff in *Blank* apparently failed even to file an EEO complaint seeking enforcement of his settlement agreement, as Munoz has done here, we had no opportunity to decide whether Title VII confers jurisdiction to enforce settlement agreements once the procedures of 29 C.F.R. § 1614.504 have been met. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

waiver of immunity must be strictly construed in favor of the sovereign and "not enlarged beyond what the language requires." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) (internal alterations and quotations omitted); *accord Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

**[2]** Section 717 of Title VII protects federal employees and provides an express waiver of sovereign immunity in suits against the government for discriminatory employment practices. *See* 42 U.S.C. §§ 2000e-5(f), 2000e-16. The EEOC is authorized to enforce the provisions of Section 717 and to issue rules and regulations as it deems necessary. *Id.* § 2000e-16(b); *see also* 29 C.F.R. § 1614.504 *et seq.* (EEOC regulations concerning the federal sector). Title VII and the EEOC's implementing regulations set forth specific administrative procedures that a complainant must first exhaust before gaining access to the federal courts on a discrimination complaint. The employer and employee may, however, choose instead to resolve the discrimination complaint voluntarily with a settlement agreement, *see* 29 C.F.R. § 1614.603, in which case the employee, as Munoz has done here, withdraws his formal complaint and forgoes his right to a civil appeal therefrom. 29 C.F.R. § 1614.504 prescribes the procedure for claiming a breach of that agreement, and it is this provision on which the question of jurisdiction hangs.

To determine whether the district court had jurisdiction over the breach of settlement claim, we look first to the plain meaning of § 1614.504 because, "[a]s a general interpretive principle, 'the plain meaning of a regulation governs.' " *See Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1097 (9th Cir. 2007) (quoting *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir. 2002)).

**[3]** 29 C.F.R. § 1614.504 allows an employee alleging noncompliance to choose between two exclusive remedies, namely specific performance or reinstatement of the original

discrimination complaint.[4] 29 C.F.R. § 1614.504(a). The regulation further provides that the EEOC is limited to awarding one of these two remedies upon determining that a breach has occurred. *Id.* § 1614.504(c). On its face, the regulation is silent as to whether an employee may proceed to federal court after receiving an adverse EEOC determination.

**[4]** Because any waiver of sovereign immunity must be unequivocally expressed, this silence counsels against a finding of jurisdiction. But the text of § 1614.504(a) does not end the matter. Had Munoz chosen to reinstate his underlying discrimination complaint instead of seeking specific performance, his claim could eventually have been heard in federal court after exhausting administrative procedures, even though § 1614.504 is silent as to that possibility. *See* 42 U.S.C. §§ 2000e-5(f)-(k), 2000e-16(c)-(d). The district court held

---

[4]Section 1614.504 is titled "Compliance with settlement agreements and final action" and states in pertinent part as follows:

> (a) . . . If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance . . . *The complainant may request that the terms of [the] settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.*

> (b) . . . If . . . complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision. . . .

> (c) . . . If the Commission determines that the agency is not in compliance . . ., *it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased.* Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under § 1614.106 or § 1614.204, as appropriate, rather than under this section.

29 C.F.R. § 1614.504 (emphasis added).

that other sections of the EEOC's regulations likewise provide an unambiguous path to federal jurisdiction when a complainant elects to seek specific performance. We thus consider whether those surrounding regulations include a waiver of the government's sovereign immunity that allows the exercise of jurisdiction over Munoz's breach of settlement agreement claim.

## B.   Regulatory Context

**[5]** No such waiver of sovereign immunity exists in the regulatory or statutory scheme as a whole; rather, reading 29 C.F.R. § 1614.504 in context only reinforces our conclusion that Congress had no intention of providing a cause of action based on an alleged breach of a predetermination settlement agreement.

The district court's conflation of generic "complaints" of noncompliance with formal Title VII "complaints" of prohibited conduct led it to the opposite conclusion. The district court reasoned as follows: (1) 29 C.F.R. § 1614.401(e) allows a complainant to appeal "an agency's alleged noncompliance with a settlement agreement" to the EEOC; (2) § 1614.405 considers an EEOC decision on appeal a "final decision" within the meaning of § 1614.407; and (3) § 1614.407(c) allows a complainant to file a civil action within 90 days of receiving a final EEOC decision. *Munoz v. England*, 557 F. Supp. 2d 1145, 1160 & n.12 (D. Haw. 2008).

**[6]** A closer examination of the regulatory provisions, however, reveals that "complaint," as used throughout 29 C.F.R. § 1614, is a term of art as defined by § 1614.103. Section 1614.103, titled "Complaints of discrimination covered by this part," states that "[i]ndividual and class *complaints of employment discrimination and retaliation prohibited by title VII [and the ADEA]* . . . shall be processed in accordance with this part." 29 C.F.R. § 1614.103(a) (emphasis added). Section 1614.407 provides that "[a] complainant who has filed an

individual complaint" may file a civil action within 90 days of receiving a final EEOC decision. *Id.* § 1614.407(c); *see also id.* § 1614.106 (discussing "[i]ndividual complaints"). Accordingly, an employee's right to a civil appeal pursuant to § 1614.407 is limited by the nature of his underlying grievance.

**[7]** The district court reasoned that Munoz has "already filed a complaint" (that is, the underlying complaint resolved by the settlement agreement he now seeks to enforce), and that this serves as a sufficient gateway for judicial review of all subsequent EEOC actions concerning him. *See Munoz*, 557 F. Supp. 2d at 1160 n.12. Because Munoz withdrew this complaint in exchange for securing the settlement agreement, it cannot serve as a basis for jurisdiction. This scenario appears to be precisely why § 1614.504 permits an aggrieved employee to request reinstatement of his complaint for further processing. The regulatory context does not support an implied cause of action for the enforcement of predetermination settlement agreements.

## C.   The Tucker Act and Sovereign Immunity

We note, finally, that our reasoning conforms with the Supreme Court's teaching that a suit to enforce a settlement agreement requires its own basis of jurisdiction independent from the federal source of the underlying claim, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 381-82 (1994), as well as with the Court of Federal Claims's recent interpretations of its own exclusive jurisdiction over damage actions in contract against the United States worth more than $10,000, pursuant to the Tucker Act, 28 U.S.C. § 1491.[5] *See, e.g.*, *Westover v. United States*, 71 Fed. Cl. 635 (2006).

---

[5]Congress has effected a limited waiver of sovereign immunity in such suits pursuant to the Tucker and Little Tucker Acts. Tucker Act, 28 U.S.C. § 1491 (exclusive Court of Federal Claims jurisdiction in claims for $10,000 or more); Little Tucker Act, 28 U.S.C. § 1346(a)(2) (concurrent

**[8]** While recognizing that Title VII "provides the exclusive judicial remedy for *claims of discrimination* in federal employment," *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (emphasis added),[6] the Court of Federal Claims has recently concluded, in light of *Kokkonen*, that "Title VII's [c]omprehensive [s]cheme of [r]eview [d]oes [n]ot [p]reclude Tucker Act [j]urisdiction in the Court of Federal Claims [o]ver Title VII [s]ettlement [a]greements," *Taylor v. United States*, 73 Fed. Cl. 532, 541 (2006); *see also Greenhill v. United States*, 92 Fed. Cl. 385 (2010); *Westover*, 71 Fed. Cl. at 639. In other words, the Court of Federal Claims has jurisdiction over such claims because they are not "brought under" Title VII § 706(f)(3). *See* 42 U.S.C. § 2000e-5(f)(3); *cf. Kokkonen*, 511 U.S. at 378, 381-82. Because Munoz's breach of settlement agreement claim is essentially a contract action against the federal government whose resolution requires no interpretation of Title VII itself, his claim cannot seek jurisdictional refuge in Title VII and belongs, if anywhere, in the Court of Federal Claims. *See* 28 U.S.C. § 1491; *Greenhill v. Spellings*, 482 F.3d 569, 575 (D.C. Cir. 2007), *reh'g en banc denied* (June 20, 2007)*; Hansson*, 411 F.3d at 234-35.

---

jurisdiction in the Court of Federal Claims and district courts in claims for less than $10,000); *see N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484-85 (9th Cir. 1985). The Court of Federal Claims's § 1491 jurisdiction is preempted, however, "where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum. . . ." *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 550 (Fed. Cir. 1994).

[6]Indeed, for a long time, the Court of Federal Claims relied on this principle to find that it therefore lacked jurisdiction over suits to enforce settlement agreements resolving Title VII disputes. *See, e.g.*, *Fausto v. United States*, 16 Cl. Ct. 750, 752-53 (1989) ("Title VII . . . is the comprehensive, exclusive, and preemptive remedy *for federal employees alleging discrimination*.") (emphasis added); *see also Griswold v. United States*, 61 Fed. Cl. 458, 464-65 (2004) (relying on *Fausto*); *Taylor v. United States*, 54 Fed. Cl. 423, 425 (2002) (same). This position changed after the Supreme Court's decision in *Kokkonen*.

**[9]** Congress, while encouraging resolution of Title VII complaints through predetermination settlement agreements,[7] *see* 29 C.F.R. §§ 1601.20(a), 1614.603, has nonetheless not provided for enforcement of such agreements in federal court. The plain meaning of the text, the overarching regulatory framework, and the long-held prudential interest in narrowly construing waivers of sovereign immunity all compel this conclusion.[8]

---

[7]In fact, several other circuits have relied on the central role of voluntary agreements in Title VII's overall statutory scheme in finding Title VII jurisdiction to enforce such agreements. *See EEOC v. Liberty Trucking Co.*, 695 F.2d 1038, 1040 (7th Cir. 1982) (reasoning from the "important remedial purposes" of Title VII that Congress must have "intended to provide the EEOC with a federal forum to enforce conciliation agreements"); *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567, 573 (5th Cir. 1983) (same); *EEOC v. Henry Beck Co.*, 729 F.2d 301, 304-05 (4th Cir. 1984) (extending the policy reasons for allowing enforcement of conciliation agreements to predetermination settlement agreements); *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1513 (11th Cir. 1985) (holding that an individual, not just the EEOC, may bring suit under Title VII to enforce a predetermination settlement agreement); *Ruedlinger v. Jarrett*, 106 F.3d 212, 214-15 (7th Cir. 1997) (same); *but see Pierce Packing*, 669 F.2d at 608-09 (drawing distinction between predetermination settlement and conciliation agreements and finding jurisdiction lacking over suits to enforce the former). None of these cases, however, involved federal employers and the attendant sovereign immunity concerns that we face here, and we do not find their reasoning persuasive in this context.

[8]Even if the district court had been able to exercise jurisdiction over Munoz's breach of settlement agreement claim, we agree with the district court and with the EEOC that no breach occurred. The settlement agreement stated Munoz would receive career-enhancing training but did not identify any specific classes. Munoz conceded that the Magazine Sprinkler Inspection and MK 45 trainings he received were career-enhancing, and the plain meaning of the agreement entitles him to nothing more. Although these career-enhancing trainings admittedly took place after the twelve-month period contemplated by the settlement agreement, Munoz's remedies under 29 C.F.R. § 1614.504, and as provided for in the agreement itself, are limited to specific performance or reinstatement of his underlying discrimination complaint. Munoz has chosen not to seek reinstatement of his complaint. Accordingly, the district court's determination that it could grant Munoz no other remedy would be correct even if it had possessed, for example, supplemental or Tucker Act jurisdiction over the claim.

## II.   Count 2: Retaliation

Without determining whether the settlement agreement entitled Munoz to VLS training, we now consider whether the Navy's denial of his requests was retaliatory in nature.

**[10]** In a Title VII retaliation action, plaintiff bears the ultimate burden of showing defendant's stated reasons to be merely pretextual, once defendant has given legitimate, non-retaliatory grounds for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff can satisfy this burden by producing either direct evidence, such as "clearly sexist, racist, or similarly discriminatory statements or actions by the employer," *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005), or circumstantial evidence supporting an inference of retaliatory or discriminatory motive, so long as such evidence is "specific and substantial," *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (internal quotation marks omitted). Merely denying the credibility of the employer's proffered reasons is insufficient to withstand summary judgment. *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994).

Here, the Navy produced legitimate, non-retaliatory, and non-discriminatory reasons for denying Munoz VLS training, consistent with the reasons repeatedly given at the time of Munoz's requests and prior to commencement of litigation. First, the only authorized VLS billet was already filled by a certified SMT, and no other VLS billets were available or would soon become available; second, even with the classroom training he sought, Munoz would still be unqualified to fill a VLS billet, which requires not only SMT certification but also ten years of on-the-job experience; and third, training Munoz would be cost-prohibitive.

**[11]** Munoz is unable to produce more than mere allegations of retaliatory or discriminatory motives. In response to the Navy's legitimate explanation that no vacant VLS position

was available, Munoz argues that the Navy acknowledged a need for more VLS technicians and had the ability to add new VLS billets. Even if the Navy could have created a new billet, Munoz fails to show any retaliatory motive behind its decision not to exercise that authority. He has no better response to the Navy's second proffered reason, simply alleging, without evidence, that his supervisor revised the VLS position description intentionally to preclude him from qualifying, and that others lacking the new qualification requirements were allowed to fill the slot. The assertion is undermined by evidence showing that Ship Repair imposed the ten-year requirement before Munoz filed his first complaint or requested VLS training, and therefore before Ship Repair even had notice that Munoz wanted VLS training. Unsubstantiated assertions of retaliatory intent, without more, are insufficient to overcome the Navy's proffered neutral reasons. *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1265 (9th Cir. 1997), *superseded by statute on other grounds as stated in Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 n.2 (9th Cir. 2002).

Finally, Munoz claims that the credibility of the Navy's third ground for denial, budgetary constraints, is undermined by the fact that the Navy paid the same per diem and travel expenses to send him to other training sessions, such as the three-month MK 45 training. The district court, however, correctly concluded that this evidence is not sufficiently specific and substantial to support an inference of retaliatory intent where it is the employer's prerogative to determine how best to allocate its limited training funds.

**[12]** Because Munoz was unable to produce evidence undermining the credibility or validity of the Navy's proffered reasons for denying VLS training, summary judgment on the retaliation claim was proper.

**AFFIRMED in part, VACATED in part, and REMANDED for proceedings consistent with this Opinion.** Each party to bear its own costs on appeal.