RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0341p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RYO MACHINE, LLC; TOBACCO OUTLET
EXPRESS, LLC; TIGHTWAD TOBACCO, LLC,
                              *Plaintiffs-Appellees*,

                    v.

UNITED STATES DEPARTMENT OF TREASURY,
ALCOHOL AND TOBACCO TAX AND TRADE
BUREAU; JOHN J. MANFREDA, Administrator,
Alcohol and Tobacco Tax and Trade Bureau,
                              *Defendants-Appellants*.

No. 11-3163

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:10-cv-2462—David D. Dowd, Jr., District Judge.

Argued: April 10, 2012

Decided and Filed:   August 20, 2012[*]

Before:  BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; QUIST, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Teresa E. McLaughlin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  William H. Hurd, TROUTMAN SANDERS LLP, Richmond, Virginia, for Appellees **ON BRIEF:** Teresa E. McLaughlin, Patrick J. Urda, Gilbert S. Rothenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.   William H. Hurd, Brian M. Haynes, Anthony F. Troy, TROUTMAN SANDERS LLP, Richmond, Virginia, Robert B. Casarona, John J. Schriner, ROETZEL & ANDRESS, Cleveland, Ohio, Mark E. Nagle, TROUTMAN SANDERS, LLP, Washington, D.C., for Appellees.

_____

[*]This decision was originally issued as an "unpublished decision" filed on August 20, 2012.  The court has now designated the opinion as one recommended for full-text publication.

[**]The Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

**OPINION**

----

McKEAGUE, Circuit Judge. The Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau and its Administrator (collectively, "the Bureau") appeal the district court's grant of a preliminary injunction to RYO Machine, LLC ("RYO") and Tobacco Outlet Express, LLC ("Tobacco Outlet") (collectively, "the Companies"). The injunction prevented enforcement of the Bureau's ruling 2010-4 ("the Ruling"). The Ruling deemed retailers that offer roll-your-own cigarette machines "manufacturers of tobacco products" within the meaning of 26 U.S.C. § 5702(d), and thus, subjected the retailers to the same permitting processes and taxation as mass manufacturers. The Companies claim that the Ruling is an incorrect interpretation of § 5702(d). During the pendency of this appeal, Congress amended § 5702(d) in a way that effectively adopts the Bureau's position in the Ruling, prospectively mooting the controversy over how the statute should apply to roll-your-own retailers as of the date the amendment went into effect. Further, we disagree with the district court's conclusion that the Anti-Injunction Act did not preclude its exercise of jurisdiction over the entire suit. Therefore, we vacate the preliminary injunction and remand this action to the district court with instructions to dismiss.

**I. BACKGROUND**

The Companies manufacture and distribute high-speed cigarette rolling machines that retailers offer to customers who want to roll their own roll cigarettes. The Companies' machines produce a carton of cigarettes in roughly 8 minutes. (*See* Mot. TRO, Ex. A, TTB Rul. 2010-4 at 2, ECF No. 2-1.) The Bureau is charged with enforcing the excise tax on tobacco products. 26 U.S.C. § 5701. Under the code, any manufacturer of tobacco products is liable to pay the excise tax. 26 U.S.C. §§ 5703(a)(1), 5701(b). Before the Bureau issued the Ruling, retailers offering the Companies' machines to customers were not liable for the excise tax because they were not considered manufacturers. (*See* Mot. TRO, Ex. A, TTB Rul. 2010-4 at 4, ECF No. 2-1.) The Ruling deems the retailers manufacturers, and therefore, requires them to acquire manufacturer permits and pay the excise tax. (*Id.*)

On October 28, 2010, the Companies and another plaintiff, Tightwad Tobacco, LLC ("Tightwad"), filed a verified complaint for declaratory and injunctive relief and a temporary restraining order in the district court. Tightwad is a retailer subject to the Ruling. The Bureau moved to dismiss the complaint. On December 14, 2010, the district court granted a preliminary injunction enjoining the Bureau from enforcing the Ruling. *See RYO Mach. Rental, LLC v. U.S. Dept. Treasury*, No. 4:10-CV-2462, 2010 WL 5158880, at *11 (N.D. Ohio, Dec. 14, 2010). The district court also granted the Bureau's motion to dismiss in part, finding that its jurisdiction over Tightwad's claims was barred by the Anti-Injunction Act. *Id.* at *6. This timely appeal followed.

During the pendency of this appeal, Congress passed and the President signed into law the Moving Ahead for Progress in the 21st Century Act, which authorized funding for highways and other transit programs ("the Highway Act" or "the Act"). *See* Pub. L. 112-141. The Highway Act offset the cost of providing such funding, in part, by amending the definition of "manufacturer of tobacco products" to include retailers who make roll-your-own machines available to customers, thereby achieving the same result as the Ruling. Specifically, the Highway Act amends 26 U.S.C. § 5702(d) as follows:

> [The term "manufacturer of tobacco products"] shall include any person who for commercial purposes makes available for consumer use (including such consumer's personal consumption or use under paragraph (1)) a machine capable of making cigarettes, cigars, or other tobacco products. A person making such a machine available for consumer use shall be deemed the person making the removal as defined by subsection (j) with respect to any tobacco products manufactured by such machine.[1] A person who sells a machine directly to a consumer at retail for a consumer's personal home use is not making a machine available for commercial purposes if such machine is not used at a retail premises and is designed to produce tobacco products only in personal use quantities.

---

[1] "Removal" or "remove" is defined as "removal of tobacco products or cigarette papers or tubes, or any processed tobacco, from the factory or from internal revenue bond under section 5704, as the Secretary shall by regulation prescribe, or release from customs custody, and shall also include the smuggling or other unlawful importation of such articles into the United States." 26 U.S.C. 5702(j).

Pub. L. 112-141 § 100122.  This amendment effects sales of roll-your-own cigarettes to customers after July 6, 2012.

## II. JURISDICTION

The Highway Act divides our assessment of the preliminary injunction into two separate questions.  On the one hand, we must address the status of the district court's preliminary injunction after the Act's effective date, July 6, 2012.  On the other hand, we must also address the status of the injunction before the effective date of the Highway Act.  We find that the Highway Act mooted the underlying controversy with regard to roll-your-own tobacco removed after its enactment.  Further, as for tobacco removed before the amendment's enactment, we find that the Anti-Injunction Act barred the district court's jurisdiction over this matter, and so we vacate the injunction in its entirety.

Mootness, even when not raised by the parties, is a jurisdictional question which we must independently resolve.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  A case is moot when there is no prospect that its decision will have an impact on the parties.  *Murphy v. Hunt*, 455 U.S. 478, 481 (1982).  This rule applies where the enactment of legislation ends the controversy between two parties.  *See Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir. 1990).  Furthermore, "an appellate court must apply the law in effect at the time it renders its decision." *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 281 (1969) (relying on *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801)).  The Highway Act definitively settles the legal status of retailers who provide the Companies' machines to customers as manufacturers of tobacco products.  Because there is now no question as to the proper interpretation of § 5702(d) as amended, it appears there is no longer any live controversy between the parties with respect to tobacco removed after the amendment's enactment.  Thus, the

prospective operation of the preliminary injunction may not extend beyond July 6, 2012.**2**

We also find that the injunction should be vacated in its entirety, i.e., even as to tobacco removed before the Highway Act's effective date, because the district court's exercise of jurisdiction was barred by the Anti-Injunction Act. With few exceptions, no court has jurisdiction over a suit to preemptively challenge a tax. 26 U.S.C. § 7421(a); *see also Bob Jones Univ.*, 416 U.S. at 736–37. This rule arises from a policy preference that those aggrieved by taxation pay the tax first, and then sue for a refund. *Bob Jones Univ.*, 416 U.S. at 736–37. The Anti-Injunction Act ("AIA") says that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C. § 7421(a). This language prevents courts from asserting jurisdiction over such cases unless they fall into one of two narrow exceptions to the AIA. *See, e.g.*, *Alexander v. Ams. United Inc.*, 416 U.S. 752, 757 (1974).

A decision as to whether an injunction can legally issue under the AIA is reviewed de novo. *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 145–46 (6th Cir. 1993). First we must consider whether the Companies' complaints are within the purview of the AIA as a "suit for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). If so, we must decide whether this case falls into an exception to the AIA that would allow us to consider the merits. We conclude that it does not.

The Companies purport to challenge the permit requirement and not the excise tax levied on the retailers—presumably because a claim directly challenging the excise tax is plainly prevented by the AIA. But the Bureau notes that the acquisition of a

---

**2**In supplemental briefing addressing the effect of the Highway Act's amendment to § 5702(d) on this case, the Companies argue that this Court should not vacate the district court's injunction, even prospectively from the date of the Highway Act's enactment, because the Companies suggest there are "serious questions about the constitutionality of the new legislation . . . involv[ing] the equal protection aspect of the Due Process Clause and / or the Takings Clause." (Appellant Ltr. Br. 2.) To the extent the Companies raise a question before this Court as to the constitutionality of the Highway Act, such a claim preemptively challenging the validity of a tax is barred by the Anti-Injunction Act, just as the Companies' claim with regard to the Ruling is barred, as discussed in detail herein. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 736–37, 749 (1974).

permit is intertwined with the overall tax scheme for tobacco manufacturers, and so a challenge to the permit is equally barred by the AIA. The AIA has been interpreted broadly to encompass almost all premature interference with the assessment or collection of any federal tax. *See Bob Jones Univ.*, 416 U.S. at 736–37; *see also Int'l Lotto Fund v. Virg. State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994) ("Regardless of how the claim is labelled, the effect of an injunction here is to interfere with the assessment or collection of a tax. The [plaintiff] is not free to define the relief it seeks in terms permitted by the Anti-Injunction Act while ignoring the ultimate deleterious effect such relief would have on the Government's taxing ability." (internal quotations omitted)).

The Supreme Court has found that the AIA applied where nonprofit organizations complained about a change in their tax-exempt status. *See Bob Jones Univ.*, 416 U.S. at 731–32; *see also Alexander v. Ams. United, Inc.*, 416 U.S. 752, 755–57 (1974). In *Bob Jones University* and *Americans United*, decided on the same day, the organizations focused their complaints on the fact that a non-exempt designation would cause their donors to pay taxes, which would decrease the organizations' donations. The Court in *Bob Jones University*, 416 U.S. at 732, said that this challenge fell "squarely within the literal scope of the Act." In *Americans United*, 416 U.S. at 761, the Court observed "[i]ndeed, respondent would not be interested in obtaining the declaratory and injunctive relief requested if that relief did not effectively restrain the taxation of its contributors." Similarly here, the purpose of the Ruling—and the permitting requirements that go with it—is to clarify the taxation status of retailers who offer high-speed rolling machines to customers so that the Bureau can enforce the excise tax. It follows that the Companies' complaint is directed at the assessment and collection of taxes, and comes within the ambit of the AIA.

The district court found that the Companies' claims fit into the exception to the AIA created by the Supreme Court in *South Carolina v. Regan*, 465 U.S. 367 (1984). *Ryo Mach. Rental*, 2010 WL 5158880 at *4. There, South Carolina sought an injunction against the Tax Equity and Fiscal Responsibility Act, Public Law 97-248, which made the interest on bearer bonds taxable, while interest on registered bonds remained non-

taxable. *South Carolina*, 465 U.S. at 370. South Carolina claimed that this forced it to issue registered bonds in violation of the Tenth Amendment. *Id.* at 371–72. The Supreme Court observed that if the AIA applied, South Carolina would have to depend on third parties (the bond purchasers) to raise the State's constitutional challenge in their tax refund suits. *Id.* at 379–80. The Court reasoned that "Congress did not intend the Act to apply where an aggrieved party would be required to depend on the mere possibility of persuading a third party to assert his claims." *Id.* at 381. So the Court created an exception to the AIA where Congress has not "provided an alternative avenue for an aggrieved party to litigate its claims" and allowed the suit to go forward. *Id.*

But this exception is very narrow. "Because of the strong policy animating the Anti-Injunction Act, and the sympathetic, almost unique, facts in [*South Carolina*], courts have construed the [*South Carolina*] exception very narrowly, undermining [plaintiff's] efforts to fit its own claims within the confines of this exception." *Judicial Watch v. Rossotti*, 317 F.3d 401, 408 n.3 (4th Cir. 2003) (citing *In re Am. Bicycle Ass'n*, 895 F.2d 1277, 1281 (9th Cir. 1990) ("Promoting the purpose behind the [AIA] requires a strict construction of any possible exceptions.")); *see also Am. Soc. of Ass'n Execs. v. Bentsen*, 848 F. Supp. 245, 250 (D.D.C. 1994) (noting that the exception announced in *South Carolina* "is a narrow one tailored to the unique factual pattern in that case").

This case is distinguishable from *South Carolina* in various ways. To begin with, the context of our consideration is quite different because the *South Carolina* Court construed the AIA in light of a claim that barring South Carolina's suit would be an unconstitutional restriction on the Supreme Court's original jurisdiction. *See South Carolina*, 465 U.S. at 373 n.9. Clearly, no such claim exists in this case.

Furthermore, the Companies' interests are inextricably intertwined with those of the retailers. This is a significant difference from *South Carolina*, where the bond purchasers had very little incentive to bring suit. In *South Carolina*, bond purchasers who wanted to avoid taxation could simply purchase the registered bonds and avoid the tax altogether. Therefore, the bond purchasers in *South Carolina* had no occasion to pay the tax and then sue for a refund. The Court sympathized with South Carolina's

situation, stating that it was "by no means certain that the State would be able to convince a taxpayer to raise its claims," and reasoned that the State should not have to depend on the "mere possibility of persuading a third party to assert [its] claims." *Id.* at 380, 81.

By contrast here, there is much more than a mere possibility the retailers will obtain the permit, pay the tax, and sue for a refund. There is no need to find an elusive third-party challenger, as at least one such challenger already exists. Tightwad, a retailer, was originally part of this lawsuit and appears to have every incentive to contest the Ruling through a refund suit. More generally, if retailers choose to continue offering the high-speed rolling machines to customers, they have an incentive to move forward by obtaining the permit, paying the excise tax, and then suing for a refund.

Unlike South Carolina, which sought to preserve its own ability to issue unregistered bonds, the Companies primarily seek to preserve the position of their customers and thereby to protect themselves from lost profits. This would be analogous to an investment advisor who specializes in placing clients under a tax shelter suing to halt the IRS's invalidation of that shelter because the advisor would lose business. Some of our sister circuit courts have sensibly held that such suits are barred by the AIA. *See Educo, Inc. v. Alexander*, 557 F.2d 617, 620 (7th Cir. 1977); *see also Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 7–8 (D.C. Cir. 1979). It follows that application of the *South Carolina* exception here would improperly extend its reach and pave the way for circumvention of the AIA.

The Court in *South Carolina* was concerned about this possibility. Specifically, Justice O'Connor suggested in her concurrence that the majority's holding might allow taxpayers to evade the AIA by simply forming organizations to litigate their tax grievances for them, which Justice O'Connor called a "fundamental undermining of the congressional purpose [as expressed in the AIA]." *South Carolina*, 465 U.S. at 394–95 (O'Connor, J., concurring in the judgment). The majority responded that "[b]ecause taxpayers have alternative remedies, it would elevate form over substance to treat such organizations as if they did not possess alternative remedies." *Id.* at 381 n.19. The

majority concluded that "such organizations could not successfully argue that the Act does not apply because [the organizations] are without alternative remedies." *Id.* Likewise here, it would "elevate form over substance" to treat the Companies as though they have no alternative remedy, and so this case lies outside the narrow reach of the *South Carolina* exception to the AIA.

The second exception is set forth in *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962), and applies only in those cases where (1) it is clear the Government will not ultimately prevail; and (2) equity jurisdiction otherwise exists. But this case does not fall under that exception either. Whether or not equity jurisdiction exists based on the irreparable harm the Companies may face, the Companies cannot satisfy the first part of the *Williams Packing* test because the Ruling's interpretation of the Code is plausible on its face. *Cf. id.* (stating that the exception should apply only if it is "apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim").

Because the Companies' suit is an attempt to impede the assessment of taxes, and because no exception to the AIA applies, the district court should have dismissed this case for lack of jurisdiction.[3]

### III.  CONCLUSION

Accordingly, we **VACATE** the preliminary injunction and **REMAND** to the district court with instructions to dismiss for lack of jurisdiction.

---

[3]We also note that the Companies' alleged injury results from the exercise of unbridled, legitimate business discretion of the retailers and not directly out of any injury caused by the Bureau. This situation raises serious questions regarding the Companies' standing to bring suit. *See Ammex, Inc. v. United States*, 367 F.3d 530, 534 (6th Cir. 2004). However, because the AIA deprived the district court of jurisdiction over the asserted claims, we do not decide whether standing was also lacking. *See Heckler v. Mathews*, 465 U.S. 728, 737 (1984).