**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONFEDERATED TRIBES AND
BANDS OF THE YAKAMA INDIAN
NATION,
            *Plaintiff-Appellant*,

v.

ALCOHOL AND TOBACCO TAX
AND TRADE BUREAU; JOHN J.
MANFREDA, in his official
capacity as Administrator of the
Alcohol and Tobacco Tax and
Trade Bureau; UNITED STATES
DEPARTMENT OF THE
TREASURY; TIMOTHY
GEITHNER, in his official
capacity as Secretary of the
United States Department of the
Treasury; UNITED STATES OF
AMERICA,
            *Defendants-Appellees*.

No. 14-35165

D.C. No.
2:11-cv-03038-RMP

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted August 30, 2016
Seattle, Washington

Filed December 13, 2016

Before:  Alfred T. Goodwin, Mary M. Schroeder,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Goodwin

## SUMMARY[*]

### Tax

The panel vacated and remanded the district court's summary judgment in favor of federal agencies in an action seeking to bar defendant federal agencies and officials from imposing the federal excise tax on tobacco products manufactured by King Mountain Tobacco Company – a corporation organized, existing, and operating under the laws of the Yakama Nation – for lack of jurisdiction under the Anti-Injunction Act.

The panel held that the declaratory and injunctive relief sought in this case "falls squarely within the literal scope" of the Anti-Injunction Act ("Act"), 26 U.S.C. § 7421(a), which bars any suit that would restrain the assessment and collection of any tax. The panel was unpersuaded by the Yakama Nation's contention that it is not a "person" within the meaning of the Act. The panel was also unpersuaded by the contention that the Yakama Nation's claims fell within the narrow exception to the Act set out in *South Carolina v.*

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

*Regan*, 465 U.S. 367 (1984) (upholding an injunction against the collection of federal taxes on interest from state-issued bearer bonds because enforcing the jurisdictional bar would deprive the state of any opportunity to obtain review of its claims).

---

## COUNSEL

Randolph Henry Barnhouse (argued) and Justin J. Solimon, Johnson Barnhouse & Keegan LLP, Albuquerque, New Mexico, for Plaintiff-Appellant.

Patrick J. Urda (argued), Teresa E. McLaughlin, and Gilbert S. Rothenberg, Attorneys; Tamara W. Ashford, Acting Assistant Attorney General; Tax Division, Department of Justice, Washington, D.C.; for Defendants-Appellants.

---

## OPINION

GOODWIN, Circuit Judge:

Confederated Tribes and Bands of the Yakama Indian Nation ("the Yakama Nation" or "the tribe") appeals the district court's summary judgment in the Yakama Nation's action seeking to bar defendant federal agencies and officials from imposing the federal excise tax on tobacco products manufactured by King Mountain Tobacco Co. ("King Mountain"). The Yakama Nation alleges that King Mountain is entitled to exemptions from the excise tax under the General Allotment Act, 25 U.S.C. § 331 *et seq.*, and the Treaty with the Yakama, 12 Stat. 951 (1855). Defendants, in turn, contend that the Anti-Injunction Act and the tax

exception to the Declaratory Judgment Act bar the Yakama Nation's claims seeking injunctive and declaratory relief.

We hold that the Anti-Injunction Act deprived the district court of jurisdiction to hear the Yakama Nation's claims. We therefore vacate the judgment and remand with instructions to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The Yakama Nation, King Mountain, and Delbert Wheeler, Sr., brought suit for injunctive and declaratory relief barring the imposition of the federal tobacco excise tax on King Mountain. The tobacco excise tax applies to "cigarettes, manufactured or imported into the United States," 26 U.S.C. § 5701(b), and "roll-your-own tobacco, manufactured in or imported into the United States," *id.* § 5701(g). "[A]ny person who manufactures" cigarettes or roll-your-own tobacco, *id.* § 5702(d), is liable for the tax, *see id.* § 5703(a).

The Yakama Nation is a federally recognized Indian Tribe. King Mountain, a corporation organized, existing, and operating under the laws of the Yakama Nation, manufactures cigarettes and "roll-your-own" tobacco. Wheeler, an enrolled member of the Yakama Nation, owns King Mountain. The tribe alleged that some of the tobacco used by King Mountain is grown on Yakama Nation trust land consistent with Yakama Nation historical practices, and the trust land-grown tobacco is then blended with other tobacco to produce King Mountain products.

The federal agencies moved to dismiss, contending that the claims were barred by the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act. The district court

granted the motion to dismiss as to King Mountain and Wheeler but denied it as to the Yakama Nation, concluding that the Yakama Nation's claims fell within the exception to the Anti-Injunction Act set out in *South Carolina v. Regan*, 465 U.S. 367, 373–81 (1984). The district court subsequently granted summary judgment in favor of the federal agencies, concluding that King Mountain was not exempt from the excise tax under the General Allotment Act or the Treaty with the Yakama. The Yakama Nation timely appealed.

## DISCUSSION

On de novo review, *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010), we hold that the Anti-Injunction Act deprived the district court of jurisdiction over the Yakama Nation's claims.[1]

The Anti-Injunction Act ("the Act") provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The Act's principal purpose is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the

---

[1] Because we hold that the Anti-Injunction Act barred the Yakama Nation's claims, we need not determine if the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), similarly would bar the claims seeking declaratory relief. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974) (noting that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act," but declining to determine whether the Declaratory Judgment Act is more preclusive after deciding that the suit was barred by the Anti-Injunction Act).

legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones Univ.*, 416 U.S. at 736 (citation omitted). Unless a suit otherwise barred by the Act "falls within one of the statutory or judicially created exceptions to the Act, the district court lacks subject matter jurisdiction and must dismiss the complaint." *Jensen v. Internal Revenue Serv.*, 835 F.2d 196, 198 (9th Cir. 1987).

The relief sought in this case—declaratory and injunctive relief prohibiting the imposition of the tobacco excise tax on King Mountain—would restrain the assessment and collection of that tax and thus "falls squarely within the literal scope of the Act." *Bob Jones Univ.*, 416 U.S. at 732. The Yakama Nation nonetheless asserts that the claims are not barred, contending, first, that the Yakama Nation is not a "person" for purposes of the Act and second, that the claims qualify for the narrow exception set out in *Regan*, 465 U.S. 367. We reject both contentions.

First, the Yakama Nation is a "person" subject to the Act's jurisdictional prohibition. This question is a matter of statutory construction, turning primarily on congressional intent as demonstrated by "[t]he words chosen by Congress . . . [and] their plain meaning." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982). "In ascertaining the plain meaning of [a] statute, [we] must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

The Act itself does not define "person," but it is part of the Internal Revenue Code, whose general definitional provision states as follows: "The term 'person' shall be construed to mean and include an individual, a trust, estate,

partnership, association, company or corporation." 26 U.S.C. § 7701(a)(1). Where a definition is introduced with the verb "includes," "[t]his word choice is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012). The Internal Revenue Code itself tells us that "[t]he terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." 26 U.S.C. § 7701(c). Because the list of entities contained in § 7701(a)(1) thus is merely illustrative, it is not determinative of whether an Indian tribe constitutes a "person" under the Act.

"When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). Webster's defines "person" to include, *inter alia*, "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." Webster's Third New International Dictionary 1686 (1971). Black's similarly defines "person" to include, *inter alia*, "[a]n entity (such as a corporation) that is recognized by law as having the rights and duties of human beings." Black's Law Dictionary 1178 (9th ed. 2004). These broad definitions are consistent with the non-exhaustive list set out in § 7701(a)(1), which includes as illustrative various entities recognized by law as having rights and duties. Accordingly, relying on the ordinary meaning of the word, the term "person" in § 7701(a)(1) covers entities that are recognized by law as the subject of rights and duties, including Indian tribes. *Accord Chickasaw Nation v. United States*, 208 F.3d 871, 878–80 (10th Cir. 2000) (relying on the ordinary meaning of the word to hold that an Indian tribe was a

"person" for purposes of § 7701(a)(1) and therefore was subject to federal wagering and occupational excise taxes).

Interpreting "person" to cover Indian tribes has another virtue: it is consistent with courts' treatment of other sovereign entities as "persons" for various provisions of the Internal Revenue Code. For example, the Tenth Circuit has construed "person" in § 7701(a)(1) to cover the United States and individual states. *See Estate of Wycoff v. Comm'r*, 506 F.2d 1144, 1151 (10th Cir. 1974). More broadly, the Supreme Court has held that states and other sovereign entities are "persons" for other Code provisions with similar definitions of "person." *See Sims v. United States*, 359 U.S. 108, 112 (1959) (holding that the term "person" included a state or other sovereign where the special definition of "person" in 26 U.S.C. § 6632 spoke only of corporations and partnerships, and the employees or officers thereof); *Ohio v. Helvering*, 292 U.S. 360, 370 (1934) (holding that a state was "embraced within the meaning of the word 'person'" where the word "person" was defined as "meaning and including a partnership, association, company, or corporation, as well as a natural person"), *overruled on other grounds by Garcia v. San Antonio Met. Transit Auth.*, 469 U.S. 528 (1985). And in *Regan*, the Court did not question that South Carolina, acting as sovereign, was a "person" under the statute at issue here, the Anti-Injunction Act.

The same reasoning that extends the Act's reach to states applies with equal force to Indian tribes. The strength of the analogy is further supported by the fact that, were Indian tribes not "persons," "we would essentially exempt tribes and tribal organizations from many forms of federal tax liability and render entire sections of the [Internal Revenue Code] superfluous." *Chickasaw Nation*, 208 F.3d at 879. This result

would be at odds with both the plain terms of the Internal Revenue Code and with the principle that "Indians and their tribes are equally subject to statutes of general applicability, just as any other United States citizen," subject to exception if there is some proof that "'Congress intended the law not to apply to Indians.'" *Solis v. Matheson*, 563 F.3d 425, 430 (9th Cir. 2009) (quoting *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985)).

Nothing in the other constraints on the use of the word "person" in the Anti-Injunction Act—that impliedly the "person" be able to maintain a suit and that the Act applies "whether or not such person is the person against whom such tax was assessed"—detracts from construing "person" to include Indian tribes. In fact, the way in which the "person" language was added to the Anti-Injunction Act lends credence to the broad reading. The original Anti-Injunction Act contained no reference to "person," barring any suit "for the purpose of restraining the assessment or collection of [any] tax," Rev. Stat. § 3224, and so it would have covered a suit like the one here. But, as the Supreme Court has indicated, the addition of the phrase "by any person, whether or not such person is the person against whom such tax was assessed" was not meant to be limiting. *Bob Jones Univ.*, 416 U.S. at 731 n.6. Instead, the new verbiage "reaffirm[ed] the plain meaning" of the Anti-Injunction Act as applying to taxpayers and nontaxpayers alike, clarifying that the new remedy in 26 U.S.C. § 7426—added as part of the same amendment—was the only means for nontaxpayer lien holders to bring an action. *Bob Jones Univ.*, 416 U.S. at 731 n.6. This history cuts against an interpretation of the statute that excludes suits based merely on the identity of the plaintiff, at least where that party readily fits the ordinary definition of "person."

All of these various textual and contextual clues in the Internal Revenue Code and the Anti-Injunction Act specifically overcome any presumption that "person" does not include the sovereign. *See Inyo Cty.,Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 709–11 (2003); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000). We conclude that Congress intended "person" in the Anti-Injunction Act to include Indian tribes like the Yakama Nation here.

Next, the district court erred in concluding that the Yakama Nation's claims fell within the exception to the Act set out in *Regan*, 465 U.S. 367. In *Regan*, South Carolina sought to enjoin the collection of federal taxes on the interest from state-issued bearer bonds, claiming that the tax violated the Tenth Amendment by, in practical effect, requiring it to issue bonds in registered form. *Id.* at 370–72. In finding an exception to the Act's jurisdictional bar, the *Regan* Court noted that South Carolina otherwise would have to depend on third parties to purchase bearer bonds, file refund suits, and raise the state's constitutional claims. *Id.* at 379–81. Because it was "by no means certain that the State would be able to convince a taxpayer to raise its claims," enforcing the Act's jurisdictional bar "would create the risk that the [Act] would entirely deprive the State of any opportunity to obtain review of its claims." *Id.* at 380–81.[2]

---

[2] Although *Regan* contains some broad language that might suggest that "the Act was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims *on its own behalf*," *id.* at 381 (emphasis added), the true focus appears to be on whether the claims can be judicially reviewed at all. Indeed, that statement is preceded by the language quoted above emphasizing that the Court's real concern was "entirely depriv[ing]" South Carolina of "any

The *Regan* exception, however, is a narrow one. *See Am. Bicycle Ass'n v. United States* (*In re Am. Bicycle Ass'n*), 895 F.2d 1277, 1281 (9th Cir. 1990) (declining to apply the *Regan* exception and noting that "[p]romoting the purpose behind the Act requires a strict construction of any possible exceptions"); *see also RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 472 (6th Cir. 2012) (describing the *Regan* exception as "very narrow"); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 408 n.3 (4th Cir. 2003) ("Because of the strong policy animating the Anti-Injunction Act, and the sympathetic, almost unique, facts in *Regan*, courts have construed the *Regan* exception very narrowly[.]").

This narrow exception is inapplicable here. Most critically, in *Regan*, the state's interest in issuing bonds in the form it chose existed separately from the bondholders' interest in avoiding taxation. *See Regan*, 465 U.S. at 380–81. A bondholder could avoid taxation simply by purchasing registered bonds, and thus would have little incentive to pay the tax, file a refund suit, and raise the state's constitutional claims. *See id.* at 381. Therefore, the state "would be required to depend on the *mere possibility* of persuading a third party [bondholder] to assert [its] claims." *Id.* (emphasis added). Here, in contrast, the Yakama Nation's asserted injury flows from the taxation of its members, and thus is wholly derivative of any injury suffered by King Mountain, a tribal corporation, and Wheeler, an enrolled member of the tribe.

---

opportunity to obtain review of its claims," *id.* at 380–81, and immediately followed by a footnote explaining that taxpayers cannot evade refund suits by setting up organizations to litigate their tax claims because allowing them to do so would "elevate form over substance," *id.* at 381 n.19. If the true inquiry is whether the aggrieved party *itself* can obtain review, it would have been unnecessary for the Court to discuss third-party bondholder refund suits at all.

King Mountain and Wheeler share the Yakama Nation's interest in preventing taxation. Indeed, the Yakama Nation's interest is one that, in another context, likely would be found adequately protected by King Mountain and Wheeler's participation in a suit. *See* Fed. R. Civ. P. 19(a)(1)(B)(i), 24(a)(2); *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). And third-party challengers are more than a mere possibility: King Mountain and Wheeler were originally parties to this action and appear to have every incentive to raise these claims in a refund suit.

Our conclusion is consistent with that of the Sixth Circuit in *RYO Machine*, where that court declined to apply the *Regan* exception to manufacturers of high-speed cigarette-rolling machines that challenged an agency ruling subjecting retailers to the same taxation as the manufacturers. 696 F.3d at 468. Because the manufacturers' interests were "inextricably intertwined with those of the retailers," the retailers could raise all relevant claims in a refund suit. *Id.* at 472. Moreover, there was "no need to find an elusive third-party challenger," as a retailer "was originally part of this lawsuit and appears to have every incentive to [raise these claims] through a refund suit." *Id.* Similarly, the Yakama Nation's interest in avoiding the taxation of its members is inextricably intertwined with King Mountain and Wheeler's interest in avoiding their own taxation. Nor, given King Mountain and Wheeler's incentives to pursue a refund suit, is there any need to find an elusive third-party challenger. We agree that the narrow *Regan* exception cannot extend so far.

Because the Anti-Injunction Act bars the Yakama Nation's claims, we **VACATE** the judgment of the district court and **REMAND** with instructions to dismiss for lack of jurisdiction. Each party shall bear its own costs on appeal.