RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AUTOCAM CORPORATION; AUTOCAM
MEDICAL, LLC; JOHN KENNEDY; PAUL
KENNEDY; JOHN KENNEDY IV; MARGARET
KENNEDY; THOMAS KENNEDY,
　　　　　　　*Plaintiffs-Appellants*,

　　　v.

KATHLEEN SEBELIUS, in her official capacity
as Secretary of Health and Human Services;
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; THOMAS E. PEREZ, in
his official capacity as Secretary of Labor;
UNITED STATES DEPARTMENT OF LABOR;
JACOB LEW, in his official capacity as
Secretary of the Treasury; UNITED STATES
DEPARTMENT OF THE TREASURY,
　　　　　　　*Defendants-Appellees*.

No. 12-2673

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cv-01096—Robert J. Jonker, District Judge.

Argued: June 11, 2013

Decided and Filed: September 17, 2013

Before: GIBBONS and STRANCH, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Patrick T. Gillen, FIDELIS CENTER FOR LAW AND POLICY, Naples, Florida, for Appellants. Alisa B. Klein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Patrick T. Gillen, FIDELIS CENTER FOR LAW AND POLICY, Naples, Florida, Jason C. Miller, MILLER JOHNSON, Grand Rapids, Michigan, for Appellants. Alisa B. Klein, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

Jay Alan Sekulow, AMERICAN CENTER FOR LAW & JUSTICE, Washington, D.C., Deborah J. Dewart, LIBERTY, LIFE AND LAW FOUNDATION, Swansboro, North Carolina, Edward L. Metzger III, ADAMS, STEPNER, WOLTERMANN & DUSING, PLLC, Covington, Kentucky, Catherine W. Short, LIFE LEGAL DEFENSE FOUNDATION, Ojai, California, Nikolas T. Nikas, Dorinda C. Bordlee, BIOETHICS DEFENSE FUND, Scottsdale, Arizona, Mailee R. Smith, AMERICANS UNITED FOR LIFE, Washington, D.C., B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, Frederick D. Nelson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, Kimberlee Wood Colby, CENTER FOR LAW AND RELIGIOUS FREEDOM CHRISTIAN LEGAL SOCIETY, Springfield, Virginia, Noel J. Francisco, JONES DAY, Washington, D.C., Robb S. Krueger, KREIS, ENDERLE, HUDGINS & BORSOS, P.C., Kalamazoo, Michigan, Lisa S. Blatt, ARNOLD & PORTER LLP, Washington, D.C., Bruce H. Schneider, STROOCK & STROOCK & LAVAN LLP, New York, New York, Martha Jane Perkins, NATIONAL HEALTH LAW PROGRAM, Carrboro, North Carolina, Charles E. Davidow, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, D.C., Brigitte Amiri, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Daniel Mach, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Washington, D.C., Michael J. Steinberg, Miriam Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Ayesha N. Khan, Gregory Lipper, Caitlin E. O'Connell, AMERICAN UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., for Amici Curiae.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Autocam Corporation and Autocam Medical, LLC (collectively, "Autocam") are for-profit, secular corporations engaged in high-volume manufacturing for the automotive and medical industries. The companies are owned and controlled by members of the Kennedy family, all of whom are practicing Roman Catholics.  Pursuant to regulations implementing the Patient Protection and Affordable Care Act of 2010 ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, Autocam's health care plan is required to cover, without cost-sharing, "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling" for female employees enrolled in its health plan.  *See* Health Res. & Servs. Admin*, Women's Preventive Services: Required Health Plan Coverage Guidelines*, http://www.hrsa.gov/womensguidelines (last visited August 5, 2013); 77 Fed. Reg. 8725-01 (Feb. 15, 2012) (codified at 45 C.F.R. § 147.130(a)(1)(iv)).

Autocam and the Kennedys claim that compliance with this directive—popularly known as "the mandate"—will force them to violate the teachings of the Kennedys' church, but failure to comply with it will result in significant fines against Autocam. They sued the Cabinet departments and secretaries responsible for implementing the ACA's mandatory coverage requirements on a variety of constitutional, statutory, and procedural grounds, and moved for a preliminary injunction that would relieve Autocam of its duty to provide the disputed coverage to its employees. The district court denied the motion. On appeal, Autocam and the Kennedys argue that they have a strong likelihood of success on their claim that the mandate violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb. Our sister circuits that have considered whether for-profit corporations may be exempted from compliance with the mandate under RFRA have split on the proper answer to the question.[1] For the reasons that follow, we dismiss the claims of the individual plaintiffs on standing grounds and otherwise affirm the judgment of the district court.

## I.

The Kennedy family members named in the complaint own "a controlling interest" in the two corporate entities that comprise Autocam. John Kennedy serves as Autocam's CEO and president and is primarily responsible for "setting . . . policies governing the conduct of all phases" of Autocam's business. The two companies have 1,500 employees in fourteen facilities worldwide, including 661 employees in the United States. The Kennedys "believe that they are called to live out the teachings of Christ in their daily activity and witness to the truth of the Gospel by treating others in a manner that reflects their commitment to human dignity," which includes their business dealings. They characterize Autocam as a for-profit, secular corporation and "the business form through which [they] endeavor to live their vocation as Christians in the world." One

---

[1] *Compare Hobby Lobby Stores, Inc. v. Sebelius*, --- F.3d ----, 2013 WL 3216103 (10th Cir. June 27, 2013 (holding that plaintiffs demonstrated a likelihood of success on the merits of their RFRA claims and remanding for consideration of the remaining preliminary injunction factors by the district court) *with Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, --- F.3d ----, 2013 WL 3845365 (3rd Cir. July 26, 2013) (affirming district court's judgment denying a preliminary injunction on both Free Exercise Clause and RFRA grounds).

of the ways that the Kennedys believe they manifest this commitment is by providing their employees with health coverage.  Autocam is "self-insured and provide[s] health benefits to [its] employees by virtue of a jointly administered benefits plan which features a group insurance plan used to provide benefits to full-time employees."

The Kennedys claim that the same religious beliefs that motivate them to provide Autocam employees with health coverage also limit the scope of the coverage they are able to provide.  They accept their church's teaching that artificial contraception and sterilization are immoral.  They also believe that they become morally responsible for the use of contraception by others when they "directly pay for the purchase of drugs and services . . . in violation of [their] beliefs."  This teaching is sometimes referred to by the plaintiffs as "material cooperation."  In applying these teachings to their ownership and operation of Autocam, the Kennedys believe that they cannot direct their closely held company's health insurance plan to "provide, fund, or participate in health care insurance that covers artificial contraception, including abortifacient contraception, sterilization, and related education and counseling."  The plaintiffs "do not seek to control what an employee or his or her dependants do with the wages and healthcare dollars" they provide because they do not consider themselves morally responsible for the choices of employees in the way plaintiffs believe they are responsible when they provide insurance coverage for services they find morally objectionable.

If required to comply with the mandate, Autocam's health plan would have "to directly pay for the purchase of drugs and services" that the Kennedys find objectionable.  The Kennedys believe that compliance with this law would constitute impermissible "material cooperation."  But failure to comply with the mandate would lead to serious financial consequences. The ACA's primary enforcement mechanism for bringing employers into compliance with the mandate is a "tax" on the employer when its health plan fails to meet the requirements of the ACA.  26 U.S.C. § 4980D(a).  The amount of additional "tax" is "$100 for each day in the noncompliance period with respect to each individual to whom such failure relates."  *Id.* § 4980D(b)(1).  If it chooses not to comply with the mandate, Autocam estimates that it will be assessed fines

of $19 million per year.  The Kennedys also allege that directing Autocam to drop health care coverage entirely is not an option because (1) they believe their faith obligates them to provide health benefits in a manner consistent with their beliefs; and (2) Autocam would still face substantial financial penalties if it chose to drop coverage entirely because it is required to provide health insurance to its employees due to the company's size.  *Id.* § 4980H.

## II.

On the government's motion, we asked for briefing on a variety of jurisdictional questions.  These questions fell into roughly two categories: the Article III standing of the plaintiffs to assert RFRA claims, and the effect of the Anti-Injunction Act, 26 U.S.C. § 7421(a) ("AIA"), on this suit.  After a review of these issues, we agree with the parties that the AIA is not an obstacle to exercising jurisdiction and that Autocam has Article III standing to assert RFRA claims.  As to the Kennedys, we agree with the government that they lack standing as individuals to bring RFRA claims arising from an obligation on their closely-held corporation.  Accordingly, their claims must be dismissed for lack of subject-matter jurisdiction.

## A.

The plaintiffs and the government agree that the AIA does not preclude the plaintiffs from seeking to enjoin the ACA mandate at this time.  That shared conclusion is sound.  The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a).  This means parties seeking to challenge the "assessment or collection of [a] tax" must pay the tax and sue for a refund afterwards.  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2582 (2012).  This suit is not precluded by the AIA because it is not intended to "restrain[]" the IRS's efforts to "assess[] or collect[]" taxes.  The plaintiffs seek to enjoin a part of the coverage requirements imposed by the mandate, not the IRS's mechanism for collecting "tax" from noncompliant employers.

Such suits are common in other regulatory contexts.  For instance, if a regulated party violates EPA regulations regarding diesel fuels, that party is assessed a "penalty" that is treated as a "tax" for AIA purposes.  *See* 26 U.S.C. § 6720A(a), 6671(a). Nonetheless, pre-enforcement challenges to these regulations are routine and courts have never applied the AIA to bar such suits.  *See, e.g.*, *Nat'l Petrochemical & Refiners Ass'n v. E.P.A.*, 287 F.3d 1130 (D.C. Cir. 2002) (considering the merits of an administrative challenge to an EPA regulation).  Because the plaintiffs seek to enjoin the legal obligation created by the mandate, rather than enjoin enforcement or collection of taxes by the IRS, we agree that the AIA does not bar a RFRA challenge to the mandate.  *See also Hobby Lobby Stores, Inc. v. Sebelius*, --- F.3d ----, 2013 WL 3216103, at *7–8 (10th Cir. 2013).

## B.

"Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  The parties agree that Autocam has standing to challenge the mandate in its corporate capacity, and we concur in that conclusion.  Autocam "face[s] an imminent loss of money, traceable to the contraceptive-coverage requirement," and it "would receive redress if a court holds the contraceptive-coverage requirement unenforceable as to them." *Hobby Lobby*, 2013 WL 3216103, at *6.

By contrast, the parties do not agree regarding the standing of the Kennedys to assert a RFRA claim arising from a legal obligation on their closely held company. Generally, shareholders of a corporation cannot bring claims intended to redress injuries to a corporation, even when the corporation is closely held.  *Franchise Tax Bd. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 602–03 (6th Cir. 1988). We agree with the government that the shareholder standing rule prevents the Kennedys from bringing a RFRA claim arising from a legal obligation on Autocam.

As a threshold matter, the Kennedys argue that the shareholder-standing rule is not applicable in RFRA cases.  RFRA provides that "[s]tanding to assert a claim or defense . . . shall be governed by the general rules of standing under article III of the Constitution."  42 U.S.C. § 2000bb-1(c).  The Kennedys claim that this language is sufficient to negate any standing rules beyond the irreducible constitutional minimum of injury-in-fact, traceability, and redressability required by Article III in RFRA cases.

We agree with the government that Congress did not remove prudential standing limitations when it enacted RFRA.  "Congress legislates against the background of [the Supreme Court's] prudential standing doctrine, which applies unless it is expressly negated."  *Bennett v. Spear*, 520 U.S. 154, 163 (1997).  RFRA makes no mention of prudential standing and does not state that Article III constitutes the exclusive set of requirements for standing in RFRA cases.  At best, the statute is ambiguous as to whether prudential standing applies, and therefore, the statute does not unseat the presumption that Congress legislates with prudential standing rules in mind.  We also find persuasive the D.C. Circuit's conclusion, based on its analysis of RFRA's legislative history, that Congress intended the statutory language in question to reinforce, rather than change, the *status quo* for standing in Free Exercise Clause cases prior to RFRA.  *Jackson v. District of Columbia*, 254 F.3d 262, 266–67 (D.C. Cir. 2001).  Accordingly, we hold that Congress did not eliminate prudential-standing restrictions when it enacted RFRA.  *See also Hobby Lobby*, 2013 WL 3216103, at *39 (Bacharach, J., concurring).

Because RFRA does not eliminate the shareholder-standing rule, we must consider whether it prevents the Kennedys from bringing a RFRA claim in their individual capacities.  Although the Kennedys concede that the shareholder standing rule would generally bar their individual capacity claims, they argue that their claims fall under an exception to this rule that applies when shareholders allege "cognizable injury . . . that is distinct from the harm suffered by [the corporation]."  *Potthoff v. Morin*, 245 F.3d 710, 718 (8th Cir. 2001); *see also Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006) (noting that shareholders with "'*a direct, personal interest* in a cause of

action'" may bring suit "'even if the corporation's rights are also implicated'" (quoting *Franchise Tax Bd.*, 493 U.S. at 336. The Kennedys assert that if Autocam complies with the mandate, it will only be because they have directed Autocam to comply by violating their religious beliefs. If they do not direct Autocam to comply with the mandate, the value of their closely held company will be significantly diminished. They claim that the harm this dilemma creates is sufficiently "distinct" from the harm to Autocam to circumvent the shareholder-standing rule.

We are not persuaded that the dilemma the Kennedys pose can be separated from the alleged harm to Autocam. "[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). The Kennedys' actions with respect to Autocam are not actions taken in an individual capacity, but as officers and directors of the corporation. As such, the Kennedys are "entrust[ed] . . . with the management of [Autocam's] affairs," and the law "impose[s] upon them fiduciary duties requiring the utmost good faith whenever they deal with the corporation they serve." *Thomas v. Satfield Co.*, 108 N.W.2d 907, 911 (Mich. 1961). "[T]he [Kennedys'] injury stems derivatively from their fiduciary duties under [Michigan] law to advance the conflicting financial and religious interests of [Autocam]," and cannot fairly be classified as a harm distinct from the one suffered by Autocam. *See Hobby Lobby*, 2013 WL 3216103, at *41 (Bacharach, J., concurring).

For much the same reasons, we reject the Kennedys' argument that Autocam can assert the Kennedys' RFRA claims on their behalf on a "pass through" theory. The Ninth Circuit has recognized on two prior occasions that for-profit corporations can assert claims under the Free Exercise Clause on behalf of their owners when the corporations behave as "an extension of the beliefs" of the natural persons who own and direct it. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1120 (9th Cir. 2009); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 619–20 (9th Cir. 1988). But this approach seems to abandon corporate law doctrine at the point it matters most. "The corporate

form offers several advantages 'not the least of which was limitation of liability,' but in return, the shareholder must give up some prerogatives, 'including that of direct legal action to redress an injury to him as primary stockholder in the business.'" *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, --- F.3d ----, 2013 WL 3845365, at *6 (3d Cir. 2013) (quoting *Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1384 (7th Cir. 1988)). We are without authority to ignore the choice the Kennedys made to create a separate legal entity to operate their business.

We acknowledge that "there is a natural inclination for the owners of [closely-held] companies to elide the distinction between themselves and the companies they own. But there is a distinction, and it matters in important respects." *Grote v. Sebelius*, 708 F.3d 850, 857 (7th Cir. 2013) (Rovner, J., dissenting). The decision to comply with the mandate falls on Autocam, not the Kennedys. For this reason, the Kennedys cannot bring claims in their individual capacities under RFRA, nor can Autocam assert the Kennedys' claims on their behalf. Accordingly, we will remand the case with instructions to dismiss the Kennedys' individual claims.

## III.

### A.

We now turn to the merits of Autocam's request for a preliminary injunction. This court reviews the denial of a preliminary injunction for an abuse of discretion, examining findings of fact for clear error and legal conclusions *de novo*. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The reviewing court looks to the same four factors the district court considered: likelihood of success on the merits, irreparable harm to the movant in the injunction's absence, harm to others as a result of the injunction's issuance, and the public interest. *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). "[T]he plaintiff bears the burden of establishing his entitlement to a preliminary injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

Because RFRA claims are, as a procedural matter, very similar to First Amendment claims, "the likelihood of success on the merits often will be the determinative factor" in analyzing whether the district court should have issued the preliminary injunction. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) ("Congress's express decision to legislate the compelling interest test indicates that RFRA challenges should be adjudicated in the same manner as constitutionally mandated applications of the test, including at the preliminary injunction stage."). Since "likelihood of success" is a legal question that this court reviews *de novo*, the effective standard of review for a denial of a preliminary injunction in this posture is also *de novo*. *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012).

**B.**

In *Employment Division v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that the Free Exercise Clause of the First Amendment does not enjoin legislatures from passing "a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [a person's] religion prescribes (or proscribes).'" 494 U.S. at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in the judgment)). Congress responded to *Smith* by enacting RFRA, which President Clinton signed into law in 1993. In the text of the statute, Congress noted its concern that "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise." 42 U.S.C. § 2000bb(a)(2). Its stated purposes in passing RFRA were "to restore the compelling interest test" for free-exercise cases that prevailed prior to *Smith* and "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." *Id.* § 2000bb(b)(1)–(2) (citing *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). To that end, RFRA requires that government action "not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." *Id.* § 2000bb-1(a). Congress defined "exercise of religion" broadly to

encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7); *see also id.* § 2000bb-2(4) (incorporating § 2000cc-5(7) into RFRA).

RFRA provides that "[a] person whose religious exercise has been burdened . . . may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," subject to the requirements of Article III standing. *Id.* § 2000bb-1(c). RFRA claims proceed in two steps. First, the plaintiff must make out a *prima facie* case by establishing Article III standing and showing that the law in question "would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro Espirita*, 546 U.S. at 428. If the plaintiff makes out a *prima facie* case, it falls to the government to "demonstrate[] that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b). The government carries the burdens of both production and persuasion when it seeks to justify a substantial burden on a sincere religious practice. *Id.* § 2000bb-2(3).

## C.

RFRA affords a cause of action to any "person whose religious exercise has been burdened." 42 U.S.C. § 2000bb-1(c). The government argues that Autocam's claim fails at the outset because Autocam is not a "person" capable of "religious exercise" in the sense RFRA intended. This is a matter of first impression in our court and the subject of a recent split among our sister circuits. *Compare Hobby Lobby*, 2013 WL 3216103, at *9 (holding "as a matter of statutory interpretation . . . Congress did not exclude for-profit corporations from RFRA's protections") *with Conestoga*, 2013 WL 3845365, at *8 ("Since [a for-profit, secular corporation] cannot exercise religion, it cannot assert a RFRA claim."). In this case, we agree with the government that Autocam is not a "person" capable of "religious exercise" as intended by RFRA and affirm the district court's judgment on this basis. In so holding, we do not reach the government's arguments that the mandate fails to impose a substantial burden on Autocam or that the mandate can be justified under RFRA's strict scrutiny test.

Congress did not define the term "person" when it enacted RFRA, so our analysis begins with the Dictionary Act, which provides default definitions for many commonly used terms in the U.S. Code. According to the Dictionary Act, "unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. The relevant "context" courts should look to when construing terms found in the Dictionary Act is "the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 200 (1993). When considering RFRA, that "context" includes "the body of free exercise case law that existed at the time of RFRA's passage," which Congress explicitly invoked in the statute's text. *Hobby Lobby*, 2013 WL 3216103, at *45 (Briscoe, C.J., concurring in part and dissenting in part). The statute being construed only has to "indicate" a definition of the contested term contrary to the baseline provided by the Dictionary Act, rather than "require" or "necessitate" such a result. *Rowland*, 506 U.S. at 200–01 ("[A] contrary 'indication' may raise a specter short of inanity, and with something less than syllogistic force.").

Looking to RFRA's relevant context, we find strong indications that Congress did not intend to include corporations primarily organized for secular, profit-seeking purposes as "persons" under RFRA. Again, Congress's express purpose in enacting RFRA was to restore Free Exercise Clause claims of the sort articulated in *Sherbert* and *Yoder*, claims which were fundamentally personal. 42 U.S.C. § 2000bb(b)(1); *Yoder*, 406 U.S. at 207 (Amish parents objecting to compulsory schooling laws); *Sherbert*, 374 U.S. at 399–401 (Seventh-Day Adventist denied unemployment compensation benefits after she refused her employer's request to work on a Saturday). Congress did not intend to expand the scope of the Free Exercise Clause. *See Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 62 (D.C. Cir. 2006) ("RFRA was not meant to 'expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court's free exercise jurisprudence under the compelling

governmental interest test prior to *Smith*.'" (quoting S. Rep. No. 103–111, at 12 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1902)).

Reading the term "person" in the manner suggested by Autocam would lead to a significant expansion of the scope of the rights the Free Exercise Clause protected prior to *Smith*. "[D]uring the 200-year span between the adoption of the First Amendment and RFRA's passage, the Supreme Court consistently treated free exercise rights as confined to individuals and non-profit religious organizations." *Hobby Lobby*, 2013 WL 3216103, at *45 (Briscoe, C.J., concurring in part and dissenting in part); *see also Conestoga*, 2013 WL 3845365, at *5 ("[W]e are not aware of any case preceding the commencement of litigation about the [m]andate[] in which a for-profit, secular corporation was itself found to have free exercise rights."). While the Supreme Court has recognized the rights of sole proprietors under the Free Exercise Clause during this period, it has never recognized similar rights on behalf of corporations pursuing secular ends for profit. *United States v. Lee*, 455 U.S. 252, 254 (1982) (Amish farmer objecting to the imposition of Social Security taxes); *Braunfeld v. Brown*, 366 U.S. 599, 601 (1961) (Jewish merchants objecting to laws requiring them to close their stores on Sunday). Moreover, the Supreme Court has observed that the purpose of the Free Exercise Clause "is to secure religious liberty *in the individual* by prohibiting any invasions thereof by civil authority." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) (emphasis added); *see also Conestoga*, 2013 WL 3845365, at *5 ("[W]e simply cannot understand how a for-profit, secular corporation–apart from its owners–can exercise religion.").

We recognize that many religious groups organized under the corporate form have made successful Free Exercise Clause or RFRA claims, and our decision today does not question those decisions. *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 525 (1993) (plaintiff was "a not-for-profit corporation organized under Florida law"); *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) (affirming RFRA claim by a New Mexico non-profit corporation), *aff'd*, 546 U.S. 418 (2006). Furthermore, we acknowledge that our

sister circuits have held that on very rare occasions, a "corporate entit[y] which [is] organized expressly to pursue religious ends . . . may have cognizable religious liberties independent of the people who animate them, even if they are profit seeking." *Grote*, 708 F.3d at 856 (Rovner, J., dissenting); *see also Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106 (D.D.C. 2012) (granting a preliminary injunction on the basis of RFRA to a for-profit Christian bookseller that was closely held by a non-profit religious entity and several trusts, all of which were organized around the same religious beliefs). But we need not "draw the conclusion that, just because courts have recognized the free exercise rights of churches and other religious entities, it necessarily follows that for-profit, secular corporations can exercise religion." *Conestoga*, 2013 WL 3845365, at \*5. The absence of any authority for the latter proposition suggests that Congress did not adopt it when it enacted RFRA.

Our interpretation is also supported by RFRA's legislative history. When enacting RFRA, Congress specifically recognized that individuals and religious organizations enjoy free exercise rights under the First Amendment and, by extension, RFRA. *See, e.g.*, Religious Freedom Restoration Act of 1993, S. Rep. No. 103–111, at 7 (1993), *reprinted in* 1993 U.S.S.C.A.N. 1892, 1897 ("The extent to which the Free Exercise Clause requires government to refrain from impeding religious exercise defines nothing less than the respective relationships in our constitutional democracy of the *individual* to government and to God." (emphasis added) (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 577 (Souter, J., concurring in part and concurring in the judgment))); *id.* at 12 ("[T]he courts have long adjudicated cases determining the appropriate relationship between religious organizations and government."); *see also Hobby Lobby*, 2013 WL 3216103, at \*46 (Briscoe, C.J., concurring in part and dissenting in part) (examining RFRA's legislative history). In contrast, the legislative history makes no mention of for-profit corporations. This is a sufficient indication that Congress did not intend the term "person" to cover entities like Autocam when it enacted RFRA.

Autocam's attempt to fill this void by relying on freedom of speech cases, most notably *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), is unavailing. In *Citizens United*, the Court "recognized that First Amendment protection extends to corporations" and collected a significant number of cases recognizing this rule. 558 U.S. at 342. But these cases all arose under the Free Speech Clause. *Conestoga*, 2013 WL 3845365, at *3. No analogous body of precedent exists with regard to the rights of secular, for-profit corporations under the Free Exercise Clause prior to the enactment of RFRA. The Free Exercise Clause and Free Speech Clause of the First Amendment have historically been interpreted in very different ways. *Id.* at *6 (tracing the differences in the Court's treatment of these clauses). Therefore, the Court's recognition of rights for corporations like Autocam under the Free Speech Clause nearly twenty years after RFRA's enactment does not require the conclusion that Autocam is a "person" that can exercise religion for purposes of RFRA.

We agree with the government that Autocam has not carried its burden of demonstrating a strong likelihood of success on the merits in this action. Accordingly, we need not consider the remaining preliminary injunction factors in order to conclude that the district court's decision to deny the relief sought by Autocam was proper.

**IV.**

For these reasons, we affirm the district court's denial of Autocam's motion for a preliminary injunction and remand the case with instructions to dismiss the Kennedys' RFRA claims due to a lack of jurisdiction.