RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CIC SERVICES, LLC,

*Plaintiff-Appellant,*

*v.*

INTERNAL REVENUE SERVICE; DEPARTMENT OF TREASURY; UNITED STATES OF AMERICA,

*Defendants-Appellees.*

> No. 18-5019

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cv-00110—Travis R. McDonough, District Judge.

Argued: October 19, 2018

Decided and Filed: August 28, 2019

Before: SUHRHEINRICH, CLAY, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON PETITION FOR REHEARING EN BANC AND REPLY:** Adam R. Webber, ELLIOTT, FAULKNER & WEBBER, Beavercreek, Ohio, Cameron T. Norris, CONSOVOY MCCARTHY PLLC, Arlington, Virginia, for Appellant. **ON RESPONSE:** Teresa E. McLaughlin, Bethany B. Hauser, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** John J. Vecchione, CAUSE OF ACTION INSTITUTE, Washington, D.C., Kristin E. Hickman, UNIVERSITY OF MINNESOTA LAW SCHOOL, Minneapolis, Minnesota, for Amici Curiae.

The panel issued an order denying the petition for rehearing en banc. CLAY, J. (pp. 3–5), delivered a separate opinion concurring in the denial of rehearing en banc. SUTTON, J. (pp. 6–7), delivered a separate opinion concurring in the denial of rehearing en banc. THAPAR, J. (pp. 8–13), delivered a separate opinion dissenting from the denial of rehearing en banc, in which KETHLEDGE, BUSH, LARSEN, NALBANDIAN, READLER, and MURPHY, JJ., joined.

_____

**ORDER**

_____

The court received a petition for rehearing en banc. The original panel reviewed the petition and concludes that the issues raised in the petition were fully considered upon the original submission and decision. The petition was then circulated to the full court. Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied.

---

### CONCURRENCE IN THE DENIAL OF REHEARING EN BANC

---

CLAY, Circuit Judge, concurring in the denial of rehearing en banc.  In their latest attempt to inflict death by distorted originalism on the modern administrative state, some of my colleagues would have this Court directly contravene the Anti-Injunction Act (the "AIA"), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."  26 U.S.C. § 7421(a).  Specifically, my colleagues would allow plaintiffs seeking to preemptively challenge regulatory taxes to evade the AIA simply by purporting to challenge only the regulatory aspect of the regulatory tax.  Yet "[t]he Supreme Court has consistently ruled" that the AIA "cannot be sidestepped by such nifty wordplay." *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1070 (D.C. Cir. 2015); *see, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 761 (1974); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 (1974); *Bailey v. George*, 259 U.S. 16, 19–20 (1922).  To hold otherwise "would reduce the [AIA] to dust in the context of challenges to regulatory taxes." *Fla. Bankers*, 799 F.3d at 1070.

Of course, that is precisely the result that my colleagues crave.  They chide the IRS for its "regulat[ion] [of] an ever-expanding sphere of everyday life" and decry that it is exercising its powers "in ways the Founders never would have envisioned."  But such complaints were not persuasive when the original panel considered this case, were not persuasive when the full court considered the petition for rehearing en banc, and are not persuasive now.  "[I]t is no answer to the growth of agencies" for federal courts to renounce the rules by which they have long abided, particularly where those rules have been clearly articulated by both Congress and the Supreme Court. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2423 (2019).

A suit seeking to preemptively challenge the regulatory aspect of a regulatory tax "necessarily" also seeks to preemptively challenge the tax aspect of a regulatory tax because invalidating the former would necessarily also invalidate the latter. *Bob Jones Univ.*, 416 U.S. at 731; *see also NFIB*, 567 U.S. at 543 ("The present challenge to *the mandate* thus seeks to restrain *the penalty's* future collection."  (emphasis added)).  Otherwise, a taxpayer could simply

"characterize" a challenge to a regulatory tax as a challenge to only the regulatory aspect of the tax and thereby evade the AIA. *Fla. Bankers*, 799 F.3d at 1071. And "as the Supreme Court has explained time and again . . . the [AIA] is more than a pleading exercise." *Id.*; *see also RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 471 (6th Cir. 2012) ("Regardless of how the claim is labeled, the effect of an injunction here is to interfere with the assessment or collection of a tax. The plaintiff is not free to define the relief it seeks in terms permitted by the [AIA] while ignoring the ultimate deleterious effect such relief would have on the Government's taxing ability." (quotation omitted)).

Against this wealth of precedent, my colleagues raise no new arguments sounding in either statutory text or caselaw. As the majority opinion in this case makes clear, *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124 (2015), *Autocam Corp. v. Sebelius*, 730 F.3d 618, 622 (6th Cir. 2013), *vacated on other grounds by Autocam Corp. v. Burwell*, 573 U.S. 956 (2014), *Korte v. Sebelius*, 735 F.3d 654, 669–70 (7th Cir. 2013), and *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126–27 (10th Cir. 2013), are all largely inapposite. None of those cases involved a regulation enforced by a tax-penalty located in Subchapter 68B of the Internal Revenue Code. Where, as here, the regulation at issue *is* enforced by a tax-penalty located in Subchapter 68B of the Internal Revenue Code, that tax-penalty becomes the relevant tax for the AIA analysis, as opposed to any third-party taxes the collection of which the regulation is designed to facilitate. *NFIB*, 567 U.S. at 544; *Fla. Bankers*, 799 F.3d at 1068. And Plaintiff's suit plainly seeks to "restrain[] (indeed eliminat[e]) the assessment and collection of that tax." *Fla. Bankers*, 799 F.3d at 1068; *see also NFIB*, 567 U.S. at 544. In contrast, *Autocam*, *Korte*, and *Hobby Lobby* all involved the Affordable Care Act's contraceptive mandate, which was a separate provision of the U.S. Code structured not as a predicate to the imposition of a tax, but as a mandate enforceable by a variety of different mechanisms.

Rather, in an instance of textbook judicial activism, my colleagues instead attempt to raise a plethora of policy concerns. Indeed, reading the dissent, one might be left with the mistaken impression that "policy concerns, rather than traditional tools of statutory construction, are shaping the judicial interpretation of statutes." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S 81, 109 (2007) (Scalia, J., dissenting). Not so. As my colleagues well know, having admonished the

IRS on the same grounds, "courts are[] [not] free to rewrite clear statutes under the banner of our own policy concerns." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019). Regardless, none of the policy concerns that the dissent raises are persuasive.

For instance, my colleagues evoke the prospect of righteous individuals forced to "bet the farm" or "risk prison time" in order to challenge regulatory taxes imposed by a purportedly illegitimate administrative state. Yet the Supreme Court has made clear that the AIA creates an exception to the general administrative law principle in favor of pre-enforcement judicial review, and that it applies even in the gravest of circumstances, such as the violation of individuals' constitutional rights. *See, e.g.*, *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 10 (2008) ("[T]he taxpayer must succumb [even] to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted."). If and when Congress has a change of heart, it remains free to amend the AIA as it sees fit.

My colleagues also opine about a supposed "elephant in the room"—the fact that "the IRS (an executive agency) exercises the power to tax and destroy, in ways the Founders never would have envisioned." Yet the Founders' expectations about how Congress would wield the power bestowed on it by the Constitution are entirely irrelevant to the case before this Court. This is a case about statutory interpretation, not about the constitutionality of the so-called administrative state, or even the constitutionality of the AIA. My colleagues thus misstep in letting their hostility toward the IRS, rather than traditional tools of statutory construction, guide their analysis. Apparently, it is no cause for doubt or self-reflection by my dissenting colleagues that no one else, including the parties litigating this case, can see the elephant.

At bottom, my colleagues raise no arguments that justify this Court's departure from settled Supreme Court precedent regarding the AIA. Accordingly, I respectfully concur in the denial of rehearing en banc.

---

**CONCURRENCE IN THE DENIAL OF REHEARING EN BANC**

---

SUTTON, Circuit Judge, concurring in the denial of rehearing en banc. Three cross-currents affect the resolution of this en banc petition.

One is that the dissenting opinion by Judge Nalbandian seems to be right as an original matter. I doubt that the words of the Anti-Injunction Act—that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person"—ban all prospective relief whenever the IRS enforces a regulation with a penalty that it chooses to call a "tax." 26 U.S.C. § 7421. And I especially doubt that conclusion in this setting— where the taxpayer's only remedy is not to "pay first challenge later" but to "report to prison first challenge later." As today's case appears to confirm, the meaning of the Anti-Injunction Act has crossed the bar from its port of birth. *See Lipke v. Lederer*, 259 U.S. 557, 562 (1922) (holding that the Anti-Injunction Act does not apply to a suit to enjoin enforcement of a penalty Congress called a "tax"). One explanation for this drift may be the historic linkage between the meaning of the Anti-Injunction Act and the Tax Injunction Act, 28 U.S.C. § 1341. *See Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1129 (2015). Keep in mind that, while the Anti-Injunction Act ensures that the IRS can perform its revenue-collecting tasks without undue interference by federal taxpayers, the Tax Injunction Act protects a different sovereign's interests—"to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes" by the States. *Rosewell v. Lasalle Nat'l Bank*, 450 U.S. 503, 522 (1981). To respect the federal taxpayer's procedural concerns today thus might slight the State's sovereign concerns tomorrow, creating the risk that too much haste in stopping one abuse of power might open the door to another.

A second reality is that this case does not come to us on a fresh slate. Whatever we might do with the issue as an original matter is not the key question. As second-tier judges in a three-tier court system, our task is to figure out what the Supreme Court's precedents mean in this setting. That is not easy because none of the Court's precedents is precisely on point and because language from these one-off decisions leans in different directions. A little caution thus is in order when it

comes to judging the efforts of our colleagues on this court and on the D.C. Circuit to sort this out. *See Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1068–70 (D.C. Cir. 2015) (Kavanaugh, J.). Neither of the two court of appeals decisions—neither ours nor the D.C. Circuit's—purports to answer this question as an original matter. And reading between the lines of Supreme Court decisions is a tricky business—hard enough with a panel of three lower-court judges, utterly daunting with a slate of sixteen lower-court judges.

The last consideration is that we are not alone. The key complexity in this case—how to interpret Supreme Court decisions interpreting the statute—poses fewer difficulties for the Supreme Court than it does for us. In a dispute in which the Court's decisions plausibly point in opposite directions, it's worth asking what value we would add to the mix by en-bancing the case in order to create the very thing that generally prompts more review: a circuit split. As is, we have Judge Thapar's dissental and Judge Nalbandian's dissent at the panel stage on one side and Judge Clay's opinion for the court on the other. These three opinions together with then-Judge Kavanaugh's opinion say all there is to say about the issue from a lower court judge's perspective. All of this leaves the Supreme Court in a well-informed position to resolve the point by action or inaction—either by granting review and reversing or by leaving the circuit court decisions in place.

---

## DISSENT FROM THE DENIAL OF REHEARING EN BANC

---

THAPAR, Circuit Judge, dissenting from the denial of rehearing en banc. In this country, people should not have to risk prison time in order to challenge the lawfulness of government action. In this circuit, they now do. Because the law does not condone—let alone require—that result, I respectfully dissent from the denial of rehearing en banc.

Although the details at first may seem technical, this is a straightforward case. In 2016, the IRS issued so-called guidance requiring taxpayers and their advisers to report certain information to the agency. Failure to do so can result in significant civil penalties. 26 U.S.C. §§ 6707–6708. And a willful violation can result in criminal penalties, including imprisonment. *Id*. § 7203. Less than a year later, CIC Services sued the IRS, alleging that the agency had issued its guidance unlawfully. The question here is whether the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person," applies to that suit. *Id*. § 7421(a).

The Supreme Court, this circuit, and other circuits have all told us that the answer to that question is no. Take the Supreme Court. Recently, it interpreted the Tax Injunction Act, which generally uses words "in the same way" as the Anti-Injunction Act. *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1129 (2015). That case had two holdings. First, the Court held that the terms "assessment" and "collection"—used in both Acts—do not refer to reporting requirements. Rather, such "information gathering" is distinct from and occurs before these other stages of the taxation process. *Id*. at 1129–31. Second, the Court held that the term "restrain"—also used in both Acts—means to "prohibit" or "stop." *Id*. at 1132 (internal quotation marks omitted). It did so because the term "'restrain' acts on a carefully selected list of technical terms" (*e.g.*, "assessment" and "collection"), not "an all-encompassing term, like 'taxation.'" *Id*. To adopt a broader definition, the Court explained, would "defeat the precision of that list, as virtually any court action related to any phase of taxation" could "inhibit" tax collection. *Id*. And the narrower definition appropriately reflected the term's "meaning in equity." *Id*. From these twin holdings, the Court easily concluded that a suit to enjoin a state law that required retailers to report certain

information to the state revenue service could not "be understood to 'restrain' the 'assessment' . . . or collection'" of a tax. *Id*. at 1133.

That conclusion nearly resolves this case. CIC filed its lawsuit to enjoin IRS "guidance" that required the company to report certain information to the agency. The company claimed that it would have to devote hundreds of hours of labor and tens of thousands of dollars to comply with that requirement. And for no good reason, the company said, because the IRS had issued its guidance in violation of the Administrative Procedure Act and the Congressional Review Act. *See* 5 U.S.C. §§ 553, 706, 801. Per the Supreme Court's direction, that suit cannot be understood to "restrain[] the assessment or collection" of a tax just because it might inhibit the agency's future collection efforts. 26 U.S.C. § 7421(a); *Direct Mktg.*, 135 S. Ct. at 1133.

This case, however, does pose one additional wrinkle. Congress has prescribed civil penalties for failing to comply with certain IRS regulations and has apparently decided that these penalties should count as "taxes" for purposes of the Anti-Injunction Act. *See* 26 U.S.C. § 6671(a); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544–45 (2012). But that fact changes little. The Anti-Injunction Act applies to suits "for the purpose of restraining the assessment or collection" of a tax. 26 U.S.C. § 7421(a). And here the suit seeks to enjoin the underlying reporting requirement, not the penalties. Nor has the IRS otherwise shown that CIC has the "purpose" of restraining these penalties. The company complains about the costs of complying with the reporting requirement, not the potential penalties for failing to do so. Indeed, CIC currently has no "tax" liability under this regulatory regime and may never incur any such liability. Simply put, this is not a case about taxes. *CIC Servs., LLC v. IRS*, 925 F.3d 247, 259 (6th Cir. 2019) (Nalbandian, J., dissenting).

Our circuit has reached the same conclusion in a nearly identical case. Specifically, we held that the Anti-Injunction Act did not apply to a lawsuit challenging the Affordable Care Act's contraceptive mandate, even though employers would have to pay a "tax" if they violated the mandate. *See Autocam Corp. v. Sebelius*, 730 F.3d 618, 621–22 (6th Cir. 2013), *vacated on other grounds sub nom. Autocam Corp. v. Burwell*, 573 U.S. 956 (2014). Our decision reasoned that the suit was "not intended to 'restrain[]' the IRS's efforts to 'assess[] or collect[]' taxes"; rather, it sought only to enjoin the underlying mandate. *Id.* at 622 (alterations in original). Although the

Supreme Court later vacated that decision, it did so on other grounds.  So the decision continues to be entitled to (at the very least) persuasive weight.  And there was no good reason to disturb it here.  *Cf. United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006); *Christianson v. Colt Indus. Operating Corp.*, 870 F.2d 1292, 1298 (7th Cir. 1989).

Our circuit was not alone in its conclusion.  Two other circuits have reached the same result using the same reasoning.  *See Korte v. Sebelius*, 735 F.3d 654, 669–70 (7th Cir. 2013); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126–27 (10th Cir. 2013) (en banc).  And another applied the same reasoning to a similar case.  *See Seven-Sky v. Holder*, 661 F.3d 1, 8–10 (D.C. Cir. 2011), *abrogated on other grounds by NFIB*, 567 U.S. 519.

Finally, these decisions just make sense.  After all, the Supreme Court has long presumed that parties may challenge agency action *before* they suffer any harm.  *See, e.g.*, *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1815–16 (2016); *Abbott Labs. v. Gardner*, 387 U.S. 136, 139–41, 152–53 (1967); *United States v. Nourse*, 34 U.S. 8, 28–29 (1835) (Marshall, C.J.).  True, the Anti-Injunction Act creates a narrow exception to that rule.  Yet the IRS's interpretation would not just broaden that exception but blast it wide open.  In recent years, the agency has begun to regulate an ever-expanding sphere of everyday life—from childcare and charity to healthcare and the environment.  That might be okay if the IRS followed basic rules of administrative law.  But it doesn't.  *See* Kristin E. Hickman & Gerald Kerska, *Restoring the Lost Anti-Injunction Act*, 103 Va. L. Rev. 1683, 1685, 1712–20 (2017).  So with great power comes little accountability.

Even so, one might think, the IRS's interpretation would still allow people to bring a challenge *after* they violate the reporting requirement and pay the penalty.  True enough.  But only if people are also willing to spend up to a year in prison.  *See* 26 U.S.C. § 7203.  In effect, these criminal sanctions make the reporting requirement in this case (and many others) unreviewable.  The IRS responds that "[it] is not clear" whether the government would criminally prosecute someone "who demonstrates a good-faith intent to submit its challenge for judicial resolution."  IRS En Banc Br. at 8.  But that has never been a "sufficient answer."  *Abbott Labs.*, 387 U.S. at 154 (rejecting the argument that "the threat of criminal sanctions" was "unrealistic").  Courts normally do not require people "to bet the farm" in order to bring an administrative challenge.

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) (internal quotation marks omitted). Yet the IRS seems to think people should bet their liberty.

Going forward in this circuit, the IRS will have the power to impose sweeping "guidance" across areas of public and private life, backed by civil and criminal sanctions, and left unchecked by administrative or judicial process. Surely nobody in 1867 would have understood the Anti-Injunction Act to require such a result. *See Pullan v. Kinsinger*, 20 F. Cas. 44, 48 (C.C.S.D. Ohio 1870) (describing the Act as "wholly unnecessary, enacted only as a politic and kindly publication of an old and familiar [common law] rule"); Erin Morrow Hawley, *The Equitable Anti-Injunction Act*, 90 Notre Dame L. Rev. 81, 96–97 (2014). Nor should we have allowed it.

By this point, one might recognize the "elephant in the room." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring). The Founders gave *Congress* the "Power To lay and collect Taxes." U.S. Const. art. I, § 8, cl. 1. They limited this power to Congress because they understood full well that "the power to tax involves the power to destroy." *M'Culloch v. Maryland*, 17 U.S. 316, 431 (1819) (Marshall, C.J.). But today, the IRS (an executive agency) exercises the power to tax and to destroy, in ways that the Founders never would have envisioned. *E.g.*, *In re United States* (*NorCal Tea Party Patriots*), 817 F.3d 953 (6th Cir. 2016). Courts accepted this departure from constitutional principle on the promise that Congress would still constrain agency power through statutes like the Administrative Procedure Act. 5 U.S.C. § 500 *et seq*. We now see what many feared: that promise is often illusory.

The IRS offers some arguments in response. It first contends that several Supreme Court decisions support its interpretation. Specifically, the agency points to *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974) and *Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974). In those cases, the Court held that the Anti-Injunction Act barred challenges to the IRS's decision to revoke the tax-exempt status of two nonprofits. The nonprofits each argued that their lawsuits sought only to maintain their flow of charitable donations, not to restrain a tax. But the Court recognized that the "primary" or "obvious purpose" of both lawsuits was to restrain the collection of taxes.

*"Americans United,"* 416 U.S. at 760–61; *Bob Jones*, 416 U.S. at 738.[1] Indeed, the plaintiffs in those cases were "defeated by [their] own pleadings, since the *only* injuries [they] identified involved tax liability." *Seven-Sky*, 661 F.3d at 10 (citing *"Americans United,"* 416 U.S. at 761; *Bob Jones*, 416 U.S. at 738–39). Yet here CIC has a clear interest—separate from any potential "tax" liability—in avoiding the substantial costs of the reporting requirement. The "purpose" of its lawsuit is to obtain relief from costs the company must pay today, not to restrain a penalty it might have to pay tomorrow. The agency also cites *NFIB*, 567 U.S. 519. But that decision never reached the question whether the lawsuit had the "purpose of restraining" a tax because the penalty in that case was not a "tax." *See id.* at 546.[2]

Lastly, the IRS invokes a policy concern, asserting that any other interpretation would allow parties to circumvent the Anti-Injunction Act through "ingenious" pleading. IRS Br. at 43. But the agency has offered little basis for that concern. And the Supreme Court's decisions in *"Americans United"* and *Bob Jones* suggest that courts can determine a lawsuit's purpose without barring every pre-enforcement challenge involving the IRS (or requiring would-be plaintiffs to file their lawsuits from prison). More to the point, the Court has repeatedly told us that we may not rewrite a statute based on policy concerns. *See, e.g.*, *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019). In sum, the Anti-Injunction Act should not apply to this suit.

---

[1]To be sure, the Supreme Court suggested at one point that the Anti-Injunction Act would bar any lawsuit that would "necessarily preclude" the collection of taxes. *Bob Jones*, 416 U.S. at 732. But that stray phrase has never since been invoked by the Court, even in a decision released on the same day by the same Justice about the same issue. *See "Americans United,"* 416 U.S. 752. If the test truly were whether a lawsuit would "necessarily preclude" the collection of taxes, then *"Americans United"* would have been a much easier case. Instead, the Court spent ten pages analyzing the facts of the case and the purpose of the lawsuit. *See id.* The "necessarily preclude" test would also have the inconvenient feature of rewriting the Anti-Injunction Act to say "effect" rather than "purpose."

[2]Of course, thoughtful jurists have read these cases as well as the Anti-Injunction Act differently. *See CIC Servs.*, 925 F.3d 247; *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065 (D.C. Cir. 2015). But the Supreme Court long ago rejected the suggestion that circuit courts should automatically follow each other's decisions. Instead, "the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right." *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900). And in rehearing this case, we could have considered other related questions that may bear on its outcome. *See Hobby Lobby*, 723 F.3d at 1157–59 (Gorsuch, J., concurring) (reasoning that the Anti-Injunction Act is not jurisdictional); Hawley, *supra*, at 90–110, 125–32 (arguing the same and noting that, if the Act is not jurisdictional, it may permit courts to grant equitable relief in a broader array of cases than currently recognized).

***

The IRS has long "envision[ed] a world in which no challenge to its actions is ever outside the closed loop of its taxing authority." *Cohen v. United States*, 650 F.3d 717, 726 (D.C. Cir. 2011) (en banc). With today's decision, I fear we have made some large strides towards such a world. For these reasons, I respectfully dissent from the denial of rehearing en banc.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk