Filed 1/19/16  Yang v. Hebrew Home for the Aged, Disabled CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| JI YANG, et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>HEBREW HOME FOR THE AGED, DISABLED, etc.,<br><br>        Defendant and Respondent. | A143052<br><br>(San Francisco County<br>Super. Ct. No. CGC 13-530998) |


Ji Yang, Aleli San Juan, Irmanette de Rosas, and Marlyn Datar (collectively, plaintiffs) are former employees of Hebrew Home for the Aged, Disabled (the Home). After their termination, plaintiffs sued the Home for race and national origin discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).  The trial court granted summary judgment for the Home, concluding the Home presented a legitimate business reason for the terminations and plaintiffs failed to demonstrate the reason was untrue or pretextual.

Plaintiffs appeal.  They contend the court erred by granting summary judgment because they demonstrated the Home's reason for their terminations was false and pretextual.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Home is a licensed skilled nursing facility in San Francisco.  In 2011, 75 percent of the nurses at the Home were Asian.  The Home's staff nurses are required,

1

among other things, to document the residents' health conditions and to communicate significant changes to appropriate staff. Staff nurses are also required to perform "skin assessment[s]" on the residents and to record their findings on multidisciplinary skin assessment sheets. The Home compiles these notes into a clinical notes report, on which the medical staff relies to treat the patient.

*Plaintiffs' Employment at the Home and Resident X*

Plaintiffs identify as Asian. Plaintiff Yang identifies as South Korean. Plaintiffs San Juan, de Rosas, and Datar identify as Filipina. In 2011, plaintiffs were nurses at the Home. Plaintiffs Yang, San Juan, and de Rosas were registered nurses; plaintiff Datar was a licensed vocational nurse. In 2011, the elderly Resident X — who suffered from a chronic condition causing his skin to blister — lived at the Home. From May to September 2011, plaintiffs cared for Resident X "virtually every single day" and sometimes up to three times daily. Plaintiffs knew of Resident X's skin condition and his tendency to develop blisters.

In early May 2011, Resident X developed a blister on his right foot. Plaintiffs were aware of the blister. The blister did not heal with standard treatment; by July 2011, it had progressed into a necrotic wound. In July 2011, plaintiff San Juan notified nurse practitioner Jennifer Serafin about the wound; in September 2011, the Home assigned wound care specialist Barbara Newman to examine the wound and recommend treatment. In October 2011, Resident X was hospitalized for treatment of the wound; he died of pneumonia in late 2011.

*The Home's Investigation and Plaintiffs' Termination*

Dr. Edwin Cabigao, Ph.D., is Asian and was raised in the Philippines. He has a doctoral degree in health care administration and is a registered nurse and a former licensed vocational nurse. As the Home's Director of Nursing, Dr. Cabigao manages the Home's registered nurses and licensed vocational nurses. In September 2011, Dr. Cabigao learned of Resident X's wound and began an investigation. Zenaida Cura, the Home's Assistant Director of Nursing — who is also Asian and from the Philippines — helped Dr. Cabigao with the investigation. Dr. Cabigao interviewed each of the 12

2

nurses who cared for Resident X between May and September 2011, including plaintiffs. All 12 nurses are Asian.

Dr. Cabigao concluded plaintiffs had improperly documented Resident X's wound on multiple occasions, in part because plaintiffs had not prepared any multidisciplinary skin assessment sheets for Resident X. The Home terminated plaintiffs' employment in November 2011 and filled their shifts with other Asian nurses working at the Home.[1] After their termination, plaintiffs filed a complaint against the Home alleging discrimination based on race and national origin in violation of FEHA.

*The Home's Motion for Summary Judgment*

In its summary judgment motion, the Home argued plaintiffs could not establish a prima facie case of discrimination because: (1) a majority of the Home's nurses — and its director and assistant director of nursing — were Asian and not of United States national origin; (2) there was no evidence of discrimination; (3) the Home did not treat similarly situated employees more favorably; and (4) plaintiffs were not adequately performing their jobs when they were terminated. The Home claimed there was no evidence of discriminatory motive because Dr. Cabigao, who terminated plaintiffs, is Asian and Filipino, and because the Home filled plaintiffs' shifts with Asian nurses already working at the Home. In addition, the Home contended Dr. Cabigao based his decision to terminate plaintiffs on how frequently they cared for Resident X, and how frequently they failed to properly document his wound. Next, the Home claimed it had a legitimate, nondiscriminatory reason for terminating plaintiffs: "their admittedly substandard documentation" regarding Resident X's blister. Finally, the Home argued plaintiffs could not establish the reason for their termination was pretextual or discriminatory, and that

---

[1]    All 12 nurses who cared for Resident X are Asian. Five (including plaintiffs) were terminated, five were suspended, and two were not disciplined. The nurses who were not terminated did not see Resident X as frequently as plaintiffs. Plaintiff Datar's union filed a grievance challenging her termination. Following an evidentiary hearing, an arbitrator concluded the Home lacked "just cause" to terminate Datar and she was reinstated.

3

nurse practitioner Serafin and wound care specialist Newman — who are Caucasian — were not similarly situated to plaintiffs.

Dr. Cabigao's supporting declaration described his investigation, including his interviews with plaintiffs. Dr. Cabigao noted he "addressed separately each of the Plaintiffs' clinical notes regarding Resident X's wound" and gave "each Plaintiff the opportunity to explain her documentation[.]" In her interview, plaintiff San Juan admitted she did not perform a skin assessment or complete a multidisciplinary skin assessment sheet, even when she noticed Resident X's wound had become necrotic. She also admitted she never measured Resident X's wound and did not document the color of the wound or the presence of odor or discharge. Plaintiff Datar admitted her clinical notes did not include the size of the wound and admitted it would have been "helpful" if she had more fully-documented the blister. Plaintiff de Rosas admitted she completed a skin assessment for Resident X without removing the dressing and observing the blister. Plaintiff Yang similarly admitted she noticed the blister in May 2011, but did not prepare a multidisciplinary skin assessment sheet; she also conceded did not document the changes she observed in the blister from May to September 2011.

After conducting his investigation and reviewing "clinical notes, treatment records, weekly nursing summary, progress notes, and employees schedules[,]" Dr. Cabigao determined plaintiffs cared for Resident X most frequently "and most frequently failed to properly document his wound[,]" in part because plaintiffs' notes did not describe the progression of Resident X's blister to necrotic wound. Dr. Cabigao based his decision to terminate plaintiffs not on their national origin or race, but on their "substandard documentation with respect to Resident X" and "the number of times [they] cared for Resident X without properly documenting his condition."

*Plaintiffs' Opposition and the Home's Reply*

In opposition, plaintiffs argued they established a prima facie case of disparate treatment and the Home's alleged reasons for terminating them were false and pretextual because: (1) they complied "with the Home's written policies" when they treated Resident X and documented his blister; (2) their clinical notes were sufficiently detailed;

4

(3) the Home investigated plaintiffs only after Resident X's family consulted an attorney regarding a lawsuit against the Home; (4) the Home's investigation was not thorough; and (5) nurse practitioner Serafin and wound care specialist Newman were similarly situated and documented Resident X's condition in the same manner as plaintiffs, but were not disciplined.[2] Plaintiffs noted the arbitration decision concluded the Home lacked "just cause" to terminate plaintiff Datar.

Plaintiffs' supporting declarations described their treatment of Resident X. Plaintiffs averred they followed the Home's policy and procedure regarding "charting and documenting" and that it was "not a common practice" in 2011 "to provide extensive documentation" of residents' blisters. According to plaintiffs, the Home's skin and wound care policy and procedure in 2011 did not require detailed description or documentation of minor skin issues such as blisters. Registered nurse Julie Baird's supporting declaration opined plaintiffs appropriately cared for Resident X and documented his skin issues in compliance with the Home's written policy. According to Baird, there was no significant difference between plaintiffs' documentation of Resident X's blister and documentation by other Home staff who were not terminated, including nurse practitioner Serafin. Plaintiffs also relied on the arbitration decision concluding the Home did not have "just cause" for plaintiff Datar's termination under the parties' collective bargaining agreement because the Home did not notify plaintiff Datar of her deficient note taking and give her an opportunity to correct the problem before terminating her.

The Home's reply claimed Serafin and Newman were not similarly situated to plaintiffs because: (1) plaintiffs were not qualified to be nurse practitioners or wound care specialists; (2) Serafin and Newman did not treat Resident X until after blister had become a necrotic wound; and (3) Serafin and Newman were not responsible for daily

---

[2]     Plaintiffs argued they were not required to complete multidisciplinary skin assessment sheets because Resident X's blister had not developed into an ulcer; they claimed the Home changed its policy after terminating them and added blisters to the list of skin conditions requiring nurses to complete multidisciplinary skin assessment sheets.

documentation of Resident X's condition from May to July 2011, when his blister was progressing into a necrotic wound. The Home also argued plaintiffs' focus on the adequacy of their documentation was irrelevant because Dr. Cabigao "reasonably believed" plaintiffs' documentation "was insufficient." As the Home explained, the issue was not whether its termination decision was wise or correct, but whether the termination was "unrelated to the prohibited form of discrimination[.]" Finally, the Home claimed plaintiffs failed to establish its reason for terminating plaintiffs was pretextual.

*Order Granting Summary Judgment*

Following a hearing, the court granted the Home's summary judgment motion. The court concluded the Home presented "a legitimate business reason for the terminations" and plaintiffs failed to present "substantial responsive evidence" showing that reason was "untrue or pretextual." According to the court, the undisputed evidence established: "(1) Dr. Cabigao is in the same class as plaintiffs (Asian) and there is an inference against racial discrimination in such circumstances; (2) Dr. Cabigao had a role in hiring plaintiff Yang and there is an inference against discrimination where the hirer and firer are the same person; (3) the nurses that replaced plaintiffs are Asian; and (4) seventy-five percent of the nurses that work for [the Home] are Asian." The court rejected plaintiffs' contention that the Home discriminated against them because Serafin and Newman "were not terminated or even investigated[,]" and concluded Serafin and Newman "did not see Resident X as frequently as plaintiffs and plaintiffs' theory of disparate treatment founders because the plaintiffs on the one hand, and Ms. Serafin and Ms. Newman, on the other hand, were not similarly situated." The court entered judgment for the Home.

DISCUSSION

I.

*FEHA and the Standard of Review*

FEHA protects employees from discrimination based on race and national origin. (Gov. Code, § 12940, subd. (a); *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159 (*Wills*).) "California has adopted the three-stage burden-shifting approach established by

the United States Supreme Court for trying [FEHA] discrimination claims."[3]  (*Horne v. District Council 16 Internat. Union of Painters & Allied Trades* (2015) 234 Cal.App.4th 524, 533 (*Horne*), citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-805.)  Plaintiffs bear "the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence.  [Citations.]" (*Horne, supra,* 234 Cal.App.4th at p. 533; *Wills, supra,* 195 Cal.App.4th at p. 159.)  If plaintiffs meet this burden, "the burden shifts to [the Home] to offer any legitimate, nondiscriminatory reasons" for terminating them. (*Horne, supra,* 234 Cal.App.4th at p. 533.)  Finally, if the Home "presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff[s] to establish [the Home] intentionally discriminated against" them.  (*Wills, supra,* 195 Cal.App.4th at p. 160.)

"We review the trial court's decision to grant summary judgment de novo.  We are not bound by the . . . court's stated rationale, but independently determine whether the record supports the . . . court's conclusion that plaintiffs['] discrimination claim failed as a matter of law.  [Citation.]" (*Wills, supra,* 195 Cal.App.4th at p. 161.)  "In performing our review, we view the evidence in a light favorable to" plaintiffs, "liberally construing [their] evidentiary submission while strictly scrutinizing the [Home's] own showing and resolving any evidentiary doubts or ambiguities in [plaintiffs'] favor." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859.)

II.

*Plaintiffs Cannot Establish the Home's Legitimate, Nondiscriminatory*
*Reason for Terminating Them was False or Pretextual*

We will assume for the sake of argument plaintiffs established a prima face case of discrimination.[4]  (See *Marquez v. Bridgestone/Firestone, Inc.* (8th Cir. 2004) 353 F.3d

---

[3]     "Due to 'the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes. [Citation.] . . .'" (*Wills, supra,* 195 Cal.App.4th at p. 159, quoting *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)

[4]     The court did not explicitly determine plaintiffs stated a prima facie case of discrimination.  The burden of establishing a prima facie case of discrimination "is not

7

1037, 1038 (*Marquez*).)  As we have explained, once the "employee establishes a prima facie case, 'the employer must offer a legitimate reason for [its] actions . . . .' [Citation.]" (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 663.)  Here, the Home articulated a legitimate, nondiscriminatory reason for plaintiffs' termination: the frequency with which plaintiffs saw Resident X and failed to document his blister.  Dr. Cabigao averred he decided to terminate plaintiffs "based strictly and only on the frequency with which [they] had the opportunity to assess Resident X's foot, and failed to properly document [his] foot condition."  Plaintiffs acknowledge "a nurse's persistent and serious failure to properly document her patients' relevant medical conditions . . . may be grounds for discharge."  (See, e.g., *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 [employer's "honest belief" the plaintiff committed an integrity violation was a legitimate reason for discharge]; *Villiarimo v. Aloha Island Air Inc.* (9th Cir. 2002) 281 F.3d 1054, 1063 ["'foolish or trivial or even baseless'" reasons, if nondiscriminatory, may support termination]; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 [employer demoted the plaintiff for nondiscriminatory reasons, including accusations of inefficiency and dishonesty].)

Plaintiffs contend they established the Home's reason for firing them was false because they were not required to provide a "detailed description" for Resident X's blister.  According to plaintiffs, the Home's written policies and procedures required nurses to complete multidisciplinary skin assessment sheets only when a resident's blister developed into a wound.  Plaintiffs' focus on their purported compliance with the Home's

---

meant to be an 'onerous' one, but is designed merely 'to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job [s]he sought was withdrawn and never filled.' [Citation.]"  (*Horne, supra,* 234 Cal.App.4th at p. 533.)  To establish a prima facie case under FEHA, the plaintiff must offer evidence: (1) she was a member of a protected class; (2) she was performing competently in her position; (3) she suffered adverse employment action; and (4) some other circumstance suggesting discriminatory motive, i.e., that the person who replaced her was not a member of a protected class.  (*Id.* at p. 534, citing *Guz, supra,* 24 Cal.4th at p. 355.)

policies and procedures is unavailing.[5] To demonstrate an employer's proffered nondiscriminatory reason is false or pretextual, "'[an employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. [Citations.] Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for the [asserted] non-discriminatory reasons." [Citations.]" [Citations.]'" (*Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at p. 1005.) Plaintiffs cannot satisfy this burden. Their disagreement with Dr. Cabigao's decision does not establish the Home's reason for terminating them was false or pretextual. (*Munoz v. Mabus* (9th Cir. 2010) 630 F.3d 856, 865 ["denying the credibility of the employer's proffered reasons is insufficient to withstand summary judgment" under Title VII].)

Next, plaintiffs claim the Home treated similarly situated employees differently, which they contend supports "a showing of pretext." According to plaintiffs, they were treated "far more adversely" than nurse practitioner Serafin and wound care specialist Newman, Caucasians who also treated Resident X. The trial court was not persuaded by this argument, and neither are we. "To establish discrimination based on disparate discipline, it must appear 'that the misconduct for which the employer discharged the plaintiff[s] was the same or similar to what a similarly situated employee engaged in, but

---

5       Plaintiffs claim the arbitration decision establishes their performance was not deficient. As it did in the trial court, the Home contends the decision is irrelevant and fails to demonstrate pretext. We agree. The arbitration decision — which concerned only plaintiff Datar — has limited relevance here. The arbitrator considered whether Home established it had "just cause" to terminate plaintiff Datar under the parties' collective bargaining agreement, i.e., whether the Home's rationale was "fair" and undertaken in "good faith." Here, the trial court considered a different issue: whether plaintiff established unlawful discrimination in violation of FEHA.

9

that the employer did not discipline the other employee similarly.' [Citation.] . . . No inference of discrimination reasonably arises when an employer has treated differently different kinds of misconduct by employees holding different positions." (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535-1536.)

"[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." (*Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 641, fn. omitted.) Here, Serafin or Newman are not similarly situated to plaintiffs. Serafin and Newman held different positions — they were *not* staff nurses at the Home — and plaintiffs concede they were not qualified to hold the positions of nurse practitioner or wound care specialist. Plaintiffs' expert, Baird, conceded Serafin's clinical notes were different than plaintiffs because of "her different scope and approach[.]" Additionally, Dr. Cabigao did not supervise the Home's nurse practitioners or physicians assistants.

That Serafin and Newman had a responsibility to document Resident X's wound does not render them similarly situated to plaintiffs. (See *Guz, supra,* 24 Cal.4th at p. 369 [alleged comparators "performed distinct duties at disparate ranks and levels of responsibility"]; *Marquez, supra,* 353 F.3d at p. 1038 [to establish other employees were similarly situated, the plaintiff "was required to point to individuals who . . . 'have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances'"].) Serafin and Newman did not care for Resident X as frequently as plaintiffs and it was not their job to document his blister as it was progressing into a necrotic wound. Serafin and Newman did not treat Resident X until after his blister had become necrotic.

We are not persuaded by plaintiffs' contention — unsupported by authority — that the Home's "deficient investigation of Resident X's care" demonstrates pretext. Courts "do not 'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination.' [Citation.]" (*Stallings v. Hussmann Corp.* (8th Cir. 2006) 447 F.3d 1041, 1052.) Here, the question is not whether the Home's investigation was perfect, but whether the Home acted with a discriminatory motive. The answer is no.

10

(See *E.E.O.C. v. Total System Services, Inc.* (11th Cir. 2000) 221 F.3d 1171, 1176 [courts will not second-guess an employer's decisions regarding internal investigations]; *Humphries v. CBOS West, Inc.* (7th Cir. 2007) 474 F.3d 387, 407 [rejecting argument that "merely pointing to an employer's shoddy investigatory efforts is sufficient to establish pretext"].)

We conclude the Home established a legitimate, nondiscriminatory reason for terminating plaintiffs' employment and plaintiffs failed to offer sufficient evidence raising a reasonable inference the Home's reason was false or a pretext for discrimination. The court properly granted the Home's summary judgment motion. (*Wills, supra,* 195 Cal.App.4th at p. 173; *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)

## DISPOSITION

The judgment is affirmed. Hebrew Home for the Aged, Disabled is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

A143052